STANFORD, administrator, *v.* CONNERY.

1. Where an execution issued against principal and surety in 1870 was kept alive by various entries until November 4, 1878, when it was levied on property of the surety, who filed his affidavit of

| 84 | 731 |
|---|---|
| 87 | 439 |
| 88 | 796 |

| 84 | 731 |
|---|---|
| 98 | 790 |

| 84 | 731 |
|---|---|
| 113 | 275 |

| 84 | 731 |
|---|---|
| 119 | 615 |

| 84 | 731 |
|---|---|
| 121 | 696 |

illegality and subsequently his bill in equity to enjoin the levy of the execution, setting up equities between himself and one to whom the execution had been assigned, which bill was afterwards transferred to the circuit court of the United States, where, on February 22, 1887, it was ordered dismissed as settled, the execution is not dormant as to the principal, although he was not a party to the litigation mentioned.

2. A letter of October 4, 1870, from the usee of the execution to his attorney, stating that it was the property of D. "and is subject to his control and direction, and you are hereby authorized to pay the amount over to him when collected, or assign him the execution if he requires it," was an assignment to D., and the usee could not afterwards transfer the execution to another.

3. If the surety bought the judgment at a discount, or, after levy of it upon his property, obtained control of it by compromise at a price less than the amount apparently due on it, he would be entitled to enforce it against the principal for only the amount necessary for reimbursement, after receiving which the execution would be paid off and discharged; and the transferee of the assignee with whom the surety compromised is entitled to collect only the difference between what the surety paid and what he had collected of his principal

(a) If the defendant in his affidavit of illegality admit that something is due on the execution, that amount must be tendered in order for the sheriff to receive the affidavit; but if he allege that it is fully paid off, the sheriff is bound to accept the affidavit

(b) The payment by the principal to the second assignee of the usee of the execution cannot avail him in this case, as he knew that the surety's property was levied on and gave him no notice of such payment.

4. That the principal's property was levied on in 1873 at the instance of the surety, who bid off but refused to take the same, and it was not resold at a loss, is no defence to the principal in this proceeding. If he was injured, his remedy is provided in the code, §§3655-6.

March 31, 1890.

Illegality.  Judgments.  Executions.  Dormancy. Principal and surety.  Assignment.  Notice.  Charge of court.  Before Judge FALLIGANT.  Chatham superior court.  June term, 1889.

An established copy of an execution in favor of May against Miller, principal, and Hone, security, for $1,408.61 principal, issued upon a judgment of May 18, 1870, and proceeding in the name of Connery as trans-

feree, was levied on realty as the property of Miller on March 4, 1887. This copy contained an entry of levy on June 1, 1870, on realty as the property of Hone, of receipt from Hone on June 30, 1873, of $350 on account of the execution, by Guerard, plaintiff's attorney; of levy on October 7, 1873, on realty as the property of Miller; of sheriff's return on January 6, 1874, that he had sold this property to Hone for $585; and of levy on November 4, 1878, on realty as the property of Hone, and of interposition of an affidavit of illegality on the same day. Miller filed his affidavit of illegality on the following grounds, in brief:

(1) At the time of the levy, the judgment was dormant and the execution was barred by the statute of limitations.

(2) Connery is not the transferee of the execution nor of the judgment, and has no interest in the same and no legal control of it.

(3) The levy was made without authority of the plaintiff in the execution, or of any one as assignee or transferee of his interest and rights therein.

(4) The execution and judgment are dormant, though they have been paid off and satisfied.

(5) The judgment and execution were transferred by the plaintiff to Collier and by Collier to Rankin on February 24, 1885; of which fact Connery was fully aware then and before he became in any way the assertor of his rights to the judgment. He is not the assignee from the plaintiff, nor from any one who is the assignee from him or who claims under any assignee; but if he is the assignee of the plaintiff, he well knew, at the time of receiving the assignment, that the plaintiff had already assigned and transferred the judgment and execution.

(6) Deponent believes on information that Hone and and not Connery is pressing the execution, and is

merely using the name of Connery for the purpose of making the levy. The execution has not been transferred to Hone, nor has Hone paid it otherwise than with the money and means of deponent and his indebtedness to deponent, which means were placed in his hands by deponent for the purpose of taking care of said judgment, prior to 1878, and no reimbursement is due him from deponent.

(7) Hone has only paid upon the execution $370.75, and against that he has been reimbursed by property of deponent which he bid off on January 6, 1874, at sheriff's sale, under levy made upon said property at the instance of Hone to satisfy the execution, the same realizing $585, for which Hone is liable and responsible; all of which appears endorsed upon the execution. Prior to the payment of any part of the execution, Hone had $1,000 of deponent's money, which had been placed in his hands to be used by him in protecting himself against the execution, and he has not paid upon the execution and judgment as much as he is liable for and has received for his reimbursement; and Connery, having no interest in the judgment and execution except that which he acquired through Hone, has no right to press the execution for more than Hone may press it against deponent; and as Hone has no right to press it, Connery has none.

In evidence appeared the original execution, issued May 24, 1870, which had been lost or misplaced at the time the copy was established, July 22, 1878. It had a mutilated appearance, the transfers to Collier and Rankin being pasted on in such a way as to obscure a part of it, and something which was attached to it appeared to be torn off. It had upon it the following entries: December 5, 1872, levy on land as the property of Hone; June 6, 187– (this part is torn so that the year date is invisible), levy on other land as the prop-

erty of Hone; June 30, 1873, an acknowledgment of receipt from Hone of $375.75 in part payment of the *fi. fa.*, by Guerard, plaintiff's attorney; February 20, 1885, a transfer of the execution and the judgment upon which it was founded, without recourse, by May to Collier; and on February 24, 1885, a similar transfer by Collier to Rankin. The following are not attached to the *fi. fa.*, but the tear on one end makes the same appear to have been attached thereto; October 2, 1873, a levy on land as the property of Miller; June 30, 1873, a direction of Guerard to the sheriff to postpone the sale of the property levied on, until further instructions; November 4, 1873, an entry stating that the sale was continued until the 1st Tuesday in December, 1873, by direction of Guerard, plaintiff's attorney; December 2, 1873, a direction from Guerard to the sheriff to continue the sale; January 6, 1874, a return by the sheriff, stating that on that day he had sold the land levied on October 2, 1873, to Hone, for $585, that Hone refused to consummate the sale, owing to some illegality as to ownership of the property; October 4, 1870, a letter from W. F. May to Guerard, as follows: "The execution *vs.* A. N. Miller and William Hone, security, for my use in the name of W. H. May, is the property of David R. Dillion and is subject to his control and direction, and you are hereby authorized to pay the amount over to him when collected, or assign him the execution if he requires it." January 27, 1887, a transfer of the execution (original and established copy) to Connery for value received, signed "John M. Guerard, plaintiff's attorney of record"; and under the same date, a transfer of the execution (original and established copy) to Connery, signed by A. Ehrlich, executor estate D. R. Dillon."  •

It further appeared that in February, 1879, in Chatham superior court, Hone filed a bill against Dillon,

setting up, among other things, that he had for nearly ten years had money transactions with Dillon, and had paid him large sums of money on account, including interest in excess of legal interest to the amount of $1,679.-97; that included among Hone's liabilities was a disputed debt of about $1,500, claimed by Dillon as assignee of the judgment in favor of May against Miller, principal, and Hone, surety; that Dillon had caused the execution issued upon this judgment to be levied on land of Hone, and was endeavoring to harass Hone with the judgment and *fi. fa.*, to which Hone had legal defences, in addition to his claim of having overpaid to Dillon all that was due by him to Dillon, which defences were set out in an affidavit of illegality filed by Hone. The bill prayed for an accounting; that notes and papers of Hone in Dillon's hands be delivered up, and the alleged lien of the judgment upon Hone's property levied on be declared satisfied and paid; and that Dillon be made to pay him the balance of $1,679.97, and in the meantime be enjoined from proceeding with the *fi. fa.*, etc. Dillon answered on March 27, 1879, that the judgment was valid and binding upon Hone, and no payment had been made upon it, except the payment to the attorney of the plaintiff in execution of a sum sufficient to pay his fee for obtaining the same, and the cost due upon it; that the amount due upon it was in no wise connected with the other transactions mentioned in the bill and answer; that Hone had repeatedly recognized the validity of the judgment and had actually received, as defendant was informed and believed, from Miller the amount of money due on the same, for the purpose of protecting himself from loss by reason of the suretyship, which, except the amount paid by him as before stated, Hone still had in his possession; that Hone had addressed to Dillon a notice requiring him to levy on the land which was levied on, October 2, 1873, as the

property of Miller, and in pursuance of this notice Dillon caused the execution to be levied on the property, which was sold under the levy to Hone for $585, and Hone refused to comply with the terms of the sale and never paid the purchase money bid by him; that Dillon had since caused the execution to be levied upon property of Hone, to which Hone had interposed his illegality, which was then pending and undetermined, etc. There was also a demurrer, which was overruled; and an additional answer was filed January 24, 1882. On the same day the cause was referred to a master in chancery, and was afterwards transferred to the circuit court of the United States, where on February 22, 1887, this cause and a bill of review filed by Hone against Ehrlich, executor, were ordered dismissed as settled. The settlement was made by Hone's agreeing to the payment of $900 in the U. S. marshal's hands, arising from the sale of Hone's property under other process, with the understanding that the execution now in question should be transferred as he directed. The money was paid, and he directed the transfer to Connery. Guerard regarded the execution as the property of Dillon. Partial payments were made on it under his instructions, and no objections were made by Miller. On June 23, 1873, Hone paid Guerard $375.73, $340 of which was Guerard's fee. When the original was supposed to be lost, Guerard established the copy, and afterwards when the original came to light, the assignments of May to Collier and of Collier to Rankin were attached to it and some parts of it were torn off. It was found in the office of the clerk of the superior court by Desverges, who had a judgment against Miller, and who told Wade, Miller's attorney, that he had found it. Wade asked Collier if he would not like to make some money by getting control of it, so that Desverges, who was pushing his claim against Miller, could not get it. Collier wrote

v 84-47

to May, and May transferred the execution to him in writing for $100. Wade attached the transfer, but afterwards took it off and attached it to another part of the execution, and in so doing tore off the word "attorney." Afterwards Collier told Wade he had found a purchaser for the execution in Rankin, and made the transfer to Rankin. Under advice of Wade, Miller paid Rankin for the execution the amount that Rankin had paid for it, with ten or twenty dollars added. Miller testified that he had no notice that the execution belonged to Dillon; or that he was the transferee; did not know and never heard of any suit between Dillon and Hone in reference to the judgment; he put $1,000 in Hone's hands for the purpose of paying this judgment, which has not been accounted for, and Hone, who had for some time the management of the property levied on October 2, 1873, was indebted to him on account of that property; he did not tell Hone positively that he wanted the $1,000 applied to the payment of the judgment, but it was understood that the money in his hands should be for the purpose of eradicating the judgment, and this $1,000 was placed in his hands, $200 on August 31, 1869, $300 on September 25, 1869, and $500 in May, 1870. Miller knew Hone's property had been levied on to pay this *fi. fa.*; saw it in the papers; had nothing himself out of which it could be collected at that time, and made no effort to object to the sale in any way. Did not know that Hone had taken an affidavit to prevent his (Hone's) property from being sold. After the judgment was obtained, there were no words or letters passed between him and Hone as to how he was to furnish Hone with funds to pay the judgment; but before the judgment, there was an understanding between them that if Miller lost the case he would put money in Hone's hands to reimburse him, or that whatever passed into Hone's hands would go to his

reimbursement.   Hone testified that he was indebted to
Connery for three, four or five years; Connery had some
claims against him he did not think he ought to pay, but
he assigned this judgment to Connery; Connery did not
pay anything.   The execution was settled from the pro-
ceeds of the sale of Hone's house, and was put in Con-
nery's name because Connery claimed Hone owed him
money. The $1,000 which Miller claimed to have put into
Hone's hands on account of this execution had been re-
turned by him to Miller, and Miller was otherwise in-
debted to him; he was not indebted to Miller on account
of the management of the property levied on October 2,
1873, as claimed by Miller; and Miller never furnished
him with any money to pay the execution.   He did not
know that Miller knew that the execution was assigned
to Dillon, but presumed he knew his (Hone's) property
was being levied on; etc.

The judge held that the 1st, 2d, 3d and 5th grounds
of illegality were not valid, and excluded them.   The
jury found against the illegality.   Miller moved for a
new trial on the grounds that the judge erred in sub-
mitting to the jury only the 4th and 6th grounds of the
affidavit and excluding the others.   Also in deciding
that the judgment was not dormant at the date of the
levy; that the letter of October 4, 1870, from May to
Guerard, operated as a legal assessment of the judg-
ment to Dillon; that the judgment was assigned by
May to Dillon prior to May's assignment of it to Col-
lier; that no legal or equitable rights could or did arise
or accrue to Miller by reason of the assignment of the
judgment and execution by May to Collier, by Collier
to Rankin, and the payment of it to Rankin, notwith-
standing Miller may not have had any notice of any
previous assignment of it by May; and that the settle-
ment effected by Hone with Dillon's executor did not
extinguish the lien of the judgment against Miller, nor

prevent the assignment of it to Connery. Also in charging as stated in the opinion. And because the verdict was contrary to law and evidence. The motion was overruled, and the defendant (Stanford, administrator of Miller, deceased) excepted.

LESTER & RAVENEL, for plaintiff in error.

R. R. RICHARDS, contra.

SIMMONS, Justice.

1. We think the court was right in holding that the execution in this case was not dormant. It was kept alive from the time it was issued in 1870 up to 1878 by various entries. On November 4th of the latter year, it was levied on the property of Hone, the security, and Hone filed an affidavit of illegality thereto, and subsequently a bill. in equity, seeking to enjoin the execution and setting up equities existing between him and Dillon, the assignee of the execution, in whose favor it was proceeding. This bill was afterwards transferred to the circuit court of the United States, and on February 22d, 1887, in that court, this cause and a bill of review filed against Ehrlich, executor of Dillon, were ordered dismissed as settled. So it seems that from the year 1878 to 1887 this execution was held up by the litigation upon the affidavit of illegality and the original bill filed by Hone against Dillon and the bill of review filed by him against Dillon's executor. It seems from the record that during these years the plaintiff was active in endeavoring to enforce this claim, and he was resisted by Hone, one of the defendants in fi. fa. and the security, and was prevented from collecting the amount due on the execution. This court has frequently decided that any bona fide action on the part of the plaintiff in execution which shows that he intends to keep the judgment alive, will prevent its dormancy. Smith v. Rust, 79 Ga. 519, Gholston v. O'Kelley, 81 Ga. 19 ; Long v. Wight, 82 Ga. 431, and cases there cited.

But it is insisted by counsel for plaintiff in error that while this litigation may have kept the execution alive as against Hone, the security, yet as Miller, the principal, was no party to the litigation, it did not keep it alive as to him ; and he relies upon the case of *Mays* v. *Compton*, 13 *Ga.* 269, to sustain him in that position. We do not think that case should control us in the decision of this, because the facts in it are very different from the facts of this case. In the former case, the litigation was between the creditor, the plaintiff, and Taylor, one of the sureties. Compton, the other surety, was not interested in the litigation, and had paid one half of the debt. There was no reason why the plaintiff, Mays, could not have had his execution levied upon Compton's property and collected the whole amount from him. But instead of doing that, he chose to litigate with Taylor, the other surety, and when Taylor defeated him, he then tried to collect the balance due upon the execution out of Compton. This court held that, as between Compton and the plaintiff, the execution was dormant. We apprehend, however, that if Taylor had not succeeded in defeating Mays, and Mays had collected the whole of the execution out of Taylor, and Compton had not paid his part, and Taylor had undertaken to collect Compton's proportion out of him, the court would not have decided that the execution was dormant as between them ; because Taylor's right to control the execution against Compton would not have accrued till he had paid it off, and the statute would not run against him till his right to enforce the execution had accrued. In this case, the litigation was between the creditor and Hone, the only security. Hone had no claim or right against his principal, Miller, until he had paid off the execution. As soon as he did this, by virtue of the statute he succeeded to all of the rights of the plaintiff, and had a right to control

the execution against Miller, his principal, to reimburse himself for the amount he had been compelled to pay for his principal. Up to that time he had no claim or right against his principal. It required payment of the execution by him to give him any such right. He was no purchaser—no volunteer, but was compelled by the stern judgment of a court to pay it. When he complied with that judgment, for the first time his right accrued, and the statute did not and could not run against him in favor of his principal until he had the right to control the execution. We think, therefore, that where an execution is levied upon the property of the principal or security, and either litigates the matter in the courts, the statute does not run in favor of the one whose property is not levied upon and who is not a party to the litigation.

2. There was no error in refusing to submit the 2d, 3d and 5th grounds of illegality. We think that the letter of October 4th, 1870, from May, the plaintiff in *fi. fa.*, to Guerard, operated as an assignment of this judgment to Dillon. *Dugas* v. *Mathews*, 9 *Ga.* 510. Dillon being the owner, when Hone satisfied him he was entitled to the execution by operation of law, and could have it assigned to Connery or any one else.

If this was a legal assignment, and we think it was, the transfer by May to Collier in February, 1885, and the transfer by Collier to Rankin on the same day, were invalid, because May, the plaintiff in the judgment, had parted with his right and title thereto. W. F. May, the owner of the *fi. fa.*, says in his letter of October 4th, 1870, to his attorney, Guerard, that the execution against Miller and Hone, security, "for my use, in the name of W. H. May, is the property of David R. Dillon, and is subject to his control and direction, and you are hereby authorized to pay the amount over to him when collected, or assign him the execution if he re-

quires it." This, as we have seen, was an assignment from May to Dillon, and after this assignment May had no further interest in the judgment, and when May afterwards undertook to assign the judgment to Collier, the title being out of him, of course he could transfer none to Collier. Under the facts as they appeared before the trial judge at the time he ruled upon this ground, the assignment to Connery was founded upon the payment made by Hone to Dillon, and there was no evidence that Hone had any notice of the assignment to Collier and Rankin. Therefore there was no error in not submitting this ground to the jury.

This disposes of the grounds of illegality not submitted by the court to the jury, except the 7th ground, upon which no point was made. Had it been objected to, doubtless the court would have disallowed it.

3. The 4th and 6th grounds were submitted. These grounds, in substance, are that the execution and judgment had been paid off and satisfied; that Miller had furnished Hone with the money and means to pay off said judgment prior to 1878; that Hone had only paid upon the execution $370.75, and that he had been reimbursed by property which he had bid off of deponent's for $585, for which Hone was liable and responsible; that Hone had in his hands prior to the payment of any part of the execution $1,000 of deponent's money, which had been placed in his hands to protect him against the execution, that he had not paid upon the execution—as much as he was liable for, and was received in his hands for his reimbursement; and that Connery, having no interest in the judgment and execution except that which he acquired through Hone, had no right to press the execution for more than Hone might press it against deponent. Upon these grounds the court charged the jury: "If the execution was taken up by Hone with money and means of his own,

then the execution can now be collected, and your verdict ought to be for the plaintiff. If a part of the execution has been paid by Miller, and any part is now due, you should find for the plaintiff, because the law requires that a defendant in execution who has partially paid an execution, before he can stop its progress on that ground, must pay or tender in payment the amount due. If the execution has been entirely paid, it cannot be collected, and you should find for the defendant." We think the court erred in giving these instructions to the jury. Under our law (Code, §2167), a surety, when he pays off a judgment against himself and his principal, can control the same only to reimburse himself for what he has paid. If he buys the judgment at a discount, he can only recover from his principal the money he paid out in the purchase. If the execution is levied upon his property, and he litigates and thereby effects a compromise for less than the amount of the judgment, he can only recover from his principal the amount he paid in the compromise. To illustrate, if Hone compromised this case with Dillon or his executor, and only paid fifteen or sixteen hundred dollars, including the fees paid to Dillon's attorney, he could not compel Miller, his principal, to pay the whole $3,000 apparently due upon the judgment. The code only allows him to control the judgment for the purpose of reimbursing himself the amount he paid out for his principal. When he does that, the judgment and execution are paid off and discharged. If a security pays off an execution, and has it levied upon the property of his principal, and that principal files an affidavit of illegality alleging that the execution has been paid off, and it appears upon the trial that it has only been partially paid, it is error in the court to instruct the jury that they must find for the security the whole amount of the face of the execution, as the court did

in this case.   The rule of court upon which the learned judge predicated this charge, in our opinion, does not apply to trials in court, and only prohibits sheriffs from receiving affidavits of illegality when the defendant in *fi. fa.* admits a part to be due.   If the defendant in his affidavit admits that there is something due upon the *fi. fa.*, then the sheriff cannot receive the affidavit unless the sum admitted to be due is paid or tendered.   Where the principal alleges in his affidavit that the judgment has been paid off, the sheriff is bound to accept it, and if upon the trial of the case before the jury it should appear either that it was only partially paid off or that the security had not paid the full face value of the execution, he could enforce it only as to the balance due in the former case, or only as to what he, the security, has paid in the latter.   "It is clear that the surety is entitled to recover the amount which he has actually paid with interest.   But a surety who compounds a debt for which his principal and himself have become jointly liable, and takes an assignment of that debt to a trustee for himself, can only claim against his principal the amount which he has actually paid."   DeColyar on Guaranties and Principal and Surety, 281.   We therefore think that, in the next trial, it should be submitted to the jury to find out how much Hone had paid upon this execution in counsel fees and costs, and in compromising the litigation or otherwise; how much, if any, had Miller placed in Hone's hands to pay on this execution. Deduct this amount from what Hone paid, and the jury should find for the balance, and the execution proceed for that amount.   If the plaintiff in error insists upon the payment to Rankin as payment of the execution, it should not be allowed to avail him as against Hone, because he knew that Hone's property had been levied upon, and gave no notice to him of any payment to Rankin, so as to avail himself of it in his litigation with Dillon.

4. It was not error to charge that if the property of Miller was levied on at the instance of Hone in 1873, and Hone bid off the property and did not take it, that fact cannot be used for the purpose of defence by Miller. If Hone bid on the property at sheriff's sale and refused to take it at his bid, and the property was not resold at a loss, we cannot see how Miller was injured. There is nothing in the record tending to show that the property was ever resold, or if it was, that it brought less than Hone's bid. A fair inference from the record would seem to show that Miller was not deprived of the property bid in by Hone. If he was injured, his remedy is provided in the code, §§3655, 3656. We therefore think the court was right in not allowing Miller a credit on the execution for that bid made by Hone at the sheriff's sale.        *Judgment reversed.*