THE FIRST NATIONAL BANK *v.* THE HARTMAN STEEL CO.

Under the special facts of this case, the account in controversy was assigned to the bank, and the assignee is entitled to the fund over the garnishing creditor.

July 8, 1891.   By two Justices.

Assignment.   Garnishment.   Attachment.   Title. Debtor and creditor.   Before Judge SMITH.   Muscogee superior court.   May term, 1890.

Reported in the decision.

FRANCIS D. PEABODY, for plaintiff in error.

WIMBISH & GILBERT and PEABODY, BRANNON & HATCHER, *contra.*

SIMMONS, Justice.

The Union Iron-Works Company of Chattanooga was under contract with the Columbus Water-Works Company to build a stand-pipe for $8,783.00, $6,000.00, of which had been paid, and the balance was to be paid when the whole work was completed and accepted by the water-works company or its representative. On November 12th, 1888, the iron-works company made a draft on the water-works company for $2,783, payable fifteen days after date, "as advised," and endorsed it to the first National Bank of Chattanooga, which, on November 13th, 1888, the day it received the draft, credited the iron-works company with the same; and on the same day the iron-works company checked out of the

bank $3,308.00, which sum included the proceeds of the draft. On that day the iron-works company sent a letter to the water-works company, from which the following are extracts :

" We have to-day made draft on you at 15 days, for balance of contract on stand-pipe at Columbus, $2,783-00. This draft, of course, we would like for you to accept, but it is not absolutely necessary if, for any reason, you prefer not doing so. We make the draft, however, inasmuch as we have gotten some money from the First National Bank here on this work, and simply want to transfer this balance to them. In other words, we wish the draft paid whenever the amount is due, either by taking up the draft, or remitting to the First National Bank here, as you see fit. . . It would be quite an accommodation to us if you would transfer this amount in the manner indicated."

The remaining parts of the letter relate to certain details about completing the stand-pipe, which are immaterial. The words "as advised" in the draft were intended to refer to this letter. The letter was received by the water-works company, and the next day thereafter the draft was presented for acceptance, which was refused, the water-works company informing the iron-works company by telegraph that it could not accept the draft till the work was satisfactory to Mr. Hill, who was the representative of the water-works company. At the time the draft was received by the bank, it was agreed between it and the treasurer of the iron-works company that the latter would notify the water-works company of the transfer to the bank of the balance due on the contract. The president of the bank knew that the letter above mentioned had been written, and relied upon it as effecting such transfer, believing that the water-works company would respect the request of the iron-works company, and would recognize the transfer thus made and pay the bank the $2,783.00 After delivery of the draft to the bank and the forwarding of

the letter of advice, neither the bank nor the iron-works company regarded the latter as having or retaining any further interest in the debt due by the water-works company. It also appears that the treasurer of the iron-works company not only notified the bank of having written the letter of advice, but delivered to its president the contract he had made with the water-works company, informed him the amount due thereon was then $2,783, and assured him that even if the draft was not accepted when presented, the amount would nevertheless be remitted to the bank. It was the intention of this treasurer, by the transactions above stated, to sell and convey to the bank the indebtedness due by the water-works company to the iron-works company, and the bank so understood the matter, and parted with its money on the faith of this understanding.

On December 12th, 1888, the Hartman Steel company, a creditor of the iron-works company, sued out an attachment, and caused a garnishment to be served on the water-works company, which answered, setting forth the above stated facts, and admitting an indebtedness of $2,672.68, which amount it offered to pay into court. The bank was made a party to this proceeding, and the contest in the court below was between the bank and the steel company as to which was entitled to this fund. The plaintiff in attachment contended that the draft did not operate, nor was it intended, as an assignment to the bank of the fund in controversy; that it was merely placed with the bank for collection for the account of the drawer, and was designed merely as collateral security for a pre-existing indebtedness of the drawer to the bank. On the other hand, the bank contended that the draft was drawn, and the letter of advice written, in pursuance of a *bona fide* transaction for value, and that the two instruments, construed together or separately, constituted a good and valid as-

signment to the bank of the balance in the hands of the water-works company due, or to become due, to the iron-works company on the contract; and that it was immaterial whether the draft was accepted or not, the letter expressly dispensing with the necessity of a formal acceptance by the water-works company. All matters and questions both of law and of fact were, by consent of the parties, submitted to the determination of the presiding judge, without the intervention of a jury. The judge rendered a decision in favor of the steel company, and a judgment was entered accordingly. Upon a motion for a new trial this judgment was adhered to, and the refusal of a new trial is the main error assigned in the bill of exceptions.

The contract between the iron-works company and the bank was made in the State of Tennessee. Under the statutes and decisions of that State, so far as we have been able to acquaint ourselves with the same, it is not necessary to the validity of an assignment of a chose in action that the same should be in writing, but as far as we are informed, the common law rule on this subject prevails in Tennessee. Under the law of Georgia, in order to vest the legal title to a chose in action in the assignee, the contract must be in writing. Code, §2244; *Turk* v. *Cook*, 63 *Ga.* 681; *Planters' Bank of Fort Valley* v. *Prater et al.*, 64 *Ga.* 613. In the view we take of this case, however, it is immaterial to determine whether the law of Tennessee or of this State should control, because, in our opinion, under the facts proved, the account was assigned to the bank in writing; and whether this assignment vested in the bank the legal, or only an equitable, title to the account, the result, we think, should be the same. The following authorities sustain our conclusion that the draft and the letter, when considered in connection with the other facts set forth in the foregoing statement, amounted to a transfer of the

account to the bank: *Ex parte* Imbert, 1 DeG. & J. 152;
Frith *v.* Forbes, 4 *Id.* 409; Ranken *v.* Alfaro, L. R. 5
Ch. Div. 786; McWilliams *v.* Webb, 32 Iowa, 577; Bank
of Commerce *v.* Bogy, 44 Mo. 1; Risley *v.* Phœnix
Bank, 83 N. Y. 318; Schmittler *v.* Simon (N. Y.), 21
N. E. Rep. 162; Moore *v.* Davis, 57 Mich. 251; Gardner
*v.* National City Bank, 39 Ohio St. 600; Burn *v.* Car-
valho, 4 M. & C. 690. Of course we do not mean to
assert that all the cases above cited cover precisely the
question now under consideration, but a careful exami-
nation of them establishes, we think, the correctness of
our ruling in this case that the account was assigned to
the bank. It will be observed that in many of these
authorities great stress is laid upon the question whether
or not, by the several transactions therein stated, the
parties actually intended a transfer or assignment of the
claims or funds to which these transactions related; and
the courts have held with great uniformity that where
such intention appears, effect should be given to it. In-
deed, this idea is given a controlling prominence and in-
fluence in most of the adjudications made on this subject.
In *Stanford* v. *Connery*, 84 *Ga.* 731, it was held that a
letter from one May, the plaintiff in *fi. fa.*, as usee, to
his attorney, Guerard, stating that the execution was
the property of Dillon, " and is subject to his control
and direction, and you are hereby authorized to pay the
amount over to him when collected, or assign him the
execution if he requires it," was an assignment thereof
to Dillon, and that said usee could not afterwards trans-
fer the execution to another. A similar ruling was
made in *Dugas* v. *Mathews et al.*, 9 *Ga.* 510.

If the legal title to the account was passed to the
bank by the draft and letter, it would follow beyond
question that the latter would be entitled to the fund
in court in preference to the steel company. But sup-
pose only the equitable title to this account passed to

the bank, then, under the following authorities, it will also appear that the bank would still be entitled to the money: 2 Wade on Attachments, §§437, 438; Drake on Attachments, §604. "A valid assignment by the defendant, which transfers either the legal or equitable title to the assignee, of property in the hands of a garnishee, or debts owing by him to such defendant, is sufficient to discharge the garnishee from liability for such property, or upon such obligation." 8 Am. & Eng. Enc. of L. (Title "Garnishment"), p. 1179, and cases cited. We are the better satisfied with the conclusion we have reached in this case because, in our opinion, it is in perfect harmony with what we regard as exact justice between these contesting parties.

One special assignment in the bill of exceptions alleges that the court erred in adjudging that the bank should pay interest on the fund in dispute from May 13th, 1889, the day the answer of the garnishee was filed, instead of from the 5th day of July, 1890, when the garnishment was dissolved by the bank, and the money paid over to it. It is unnecessary to decide this question, however, because under the judgment we now render, the bank is entitled to the entire fund in controversy, and the question made concerning interest is therefore out of the case.        *Judgment reversed.*