## PROCTOR *v.* PIEDMONT PORTLAND CEMENT & LIME CO.

1. When in a bill of exceptions it is recited that the same was tendered
within the time prescribed by law, the writ of error will not be dis-
missed because of the failure of the presiding judge to certify the same
within the statutory period, unless it be made to appear that his failure
to do so was caused by some act of the plaintiff in error or his counsel.
2. There was no error in dismissing the petition on demurrer.

APRIL 21, 1910.

Equitable petition.    Before Judge Pendleton. .  Fulton superior
court.    January 4, 1909.

*Anderson, Felder, Rountree & Wilson,* for plaintiff.

*Rosser & Brandon, Olin T. Lester,* and *I. S. Hopkins Jr.,* for
defendant.

The petition was by R. L. Proctor against the Piedmont Port-
land Cement & Lime Company, E. C. Lester, M. C. Morris, and
W. E. Jenkins, alleging, in substance, as follows: The three de-
fendants last named are directors, and two of them officers, of the
other defendant, a corporation.    On July 27, 1907, Lester, Morris,
and Jenkins, together with W. M. Jones and others, procured a
charter under the corporate style of the Piedmont Slate Company,
for the purpose of carrying on the business of the manufacture of
slate, etc.    The incorporators were 10 in number, including the
plaintiff and the individual defendants.    Just prior to or about
the time of the organization of the company, Lester and Jenkins
secured an option on 80 acres of cement or lime lands near Deavitts,
Georgia, and proposed to turn over this option to the corporation.
On August 5, 1907, a meeting of the members of the corporation
was held, at which it was decided by resolution, passed unani-
mously, to issue to each of the ten members of the corporation

eight hundred shares of the stock of the corporation; and that other shares of the stock of the company to the extent of $50,000 par value, should be issued and sold to ten other persons, who were to be induced to subscribe therefor and pay for the same in cash at the rate of 40 cents on the dollar. The cash so realized was to be employed to pay for the purchase-price of the cement land, to wit $20,000. The company was then to be composed of twenty members, the original ten to have eight hundred shares each, as originally issued to them, and the ten who were to be induced to purchase the five hundred shares, these latter shares to be equally divided between the ten last named. Pursuant to the resolution stock certificates of the Piedmont Slate Company for eight hundred shares of capital stock were issued to each of the original ten members. On January 8, 1908, the charter of the Piedmont Slate Company was so amended as to change its name to the Piedmont Portland Cement & Lime Company, and to en-- large the business so as to permit it to carry on the business of manufacturing cement, and dealing in cement, lime, etc. About this time Lester, Morris, and Jenkins conceived the design of taking charge of the corporation and excluding all of the other original members therefrom; and in pursuance of this design to take over to themselves for their own benefit and use the business and assets of the company, Morris, Lester, and Jenkins and the president of the company, Dr. Beattie, procured the money necessary to pay the purchase-price of the cement land, the option to buy which still remained in Morris and Lester, and took the title to Morris and Lester; and as a part of the scheme to defraud petitioner and others, the defendants bought out the interests of Dr. Beattie, and the interest of some of the others of the members of the original corporation, at nominal figures. In further pursuance of the plan of Lester, Morris, and Jenkins to acquire for themselves the entire control of the company and exclude petitioner and others therefrom, they turned over to the Piedmont Portland Cement & Lime Company the cement property, valued at $200,000, and caused to be issued to themselves stock of the corporation of the par value of $25,000, and numerous other shares of the corporation were sold to outside parties upon the faith of the cement property being worth $200,000, and upon the faith of the corporation's having stock of this value. No stock was issued to petitioner. Peti-

tioner shows that the company has been actively operating during the present year, and he believes its operations have been profitable, and that the cement and lime property acquired by the company was and is worth $200,000 to the company.    He claims that in equity he is the owner of an interest in the company, equivalent to two thousand shares of the par value of one hundred dollars, above any and all liabilities of petitioner to the corporation, and that he has been defrauded· of his interest and excluded from the corporation by the defendants.    Wherefore he prays: that his right to twenty thousand dollars, par value, of the stock of the corporation be established, and that the defendants be enjoined from denying him his rights in the corporation, and from in any wise interfering with his enjoyment thereof or participating in the affairs and conduct of the business of the corporation; that the defendants be decreed to hold as trustees for him $20,000, par value, of the stock of the company, and be required to transfer the same to him; that the corporation be required, by mandamus or other appropriate writ, to issue to him certificates representing his interest; and that there be an accounting between him and the defendants, in order that his rights and interests may be accurately determined.

The defendants demurred to the petition, on the ground that the plaintiff was not entitled to the relief prayed for; and especially because he failed to set out the charter or any records of the corporation, and that his statement as to what was done by the corporation was a mere conclusion drawn from the facts, and that the facts should be pleaded.    By amendment the plaintiff alleged, that he was a stockholder of the Piedmont Slate Company, the same corporation whose name was thereafter changed to the Piedmont Portland Cement & Lime Company, and held eight hundred shares of the capital stock of the Piedmont Slate Company, fully paid up, represented by a stock certificate issued by the duly authorized officers of the Piedmont Slate Company; that he was one of the ten constituting the Slate Company, each of whom owned eight hundred shares of the capital stock of the company; that the option on the 80 acres of land known as the cement land was in equity the property and right of the Piedmont Slate Company from and after August 5, 1907, at which time the reorganization of the corporation was proposed and unanimously agreed upon by resolution of the company, in consideration of which reorganization

Lester and Jenkins agreed to hold their option on the cement lands for and in behalf of the company, and the same to be used in the reorganized company, as recited in the original petition; that by virtue of his ownership of eight hundred shares, by virtue of the reorganization of the company and the amendment of its charter, and by virtue of the fact that the property of the Piedmont Slate Company was largely composed of the option on the cement land belonging to the Slate Company and valued at $200,000, his interest in the reorganized company, to wit the Piedmont Portland Cement & Lime Company, was $20,000 of the capital stock thereof, which, by the conspiracy, collusion, and fraud of the defendants Lester, Morris, and Jenkins, was credited upon the books of the corporation to Lester, Morris, and Jenkins, and stock certificates therefor issued to them; that by virtue of the facts stated in the original petition and the amendment, Lester, Morris, and Jenkins became trustees for the plaintiff of the $20,000 of stock of the Piedmont Portland Cement & Lime Company; and that the plaintiff has demanded of the defendants a transfer of the stock which belongs to plaintiff, which they refused, and also refused to recognize him as a stockholder or as being entitled to participate in the management of the corporation either as a stockholder or otherwise. The defendants renewed their demurrers, adding other grounds. The court sustained them, and the plaintiff excepted.

EVANS, P. J. (After stating the facts.)

1. The motion to dismiss the bill of exceptions as not being certified within thirty days of the judgment complained of is denied. Where it is recited in a bill of exceptions that it was tendered to the judge within the time prescribed by law, and the judge signs the usual and statutory certificate, which certifies as true the recitals in the bill of exceptions, and where it does not appear that the failure of the judge to sign and certify within the statutory limit was due to the fault of the plaintiff in error or his counsel, the writ of error will not be dismissed on this ground. *Moore* v. *Kelly,* 109 *Ga.* 798 (35 S. E. 168).

2. The gravamen of the plaintiff's complaint seems to be that certain stockholders of the corporation participated in what is called in the present day vernacular "a melon cutting," from which he was excluded. If the plaintiff's endeavor is to share in the fruits of a fraud perpetrated on the corporation, neither equity nor

law will aid in a partition of the profits of the fraud between him and those who defrauded the corporation.  Nor can he as a minority stockholder proceed in equity for fraud against the corporation and its officers until he has made an earnest effort to obtain redress at the hands of the directors and stockholders, or show why it could not be done or it is not reasonable to require it.  Civil Code, § 1860.  On the other hand, if we construe the petition as an effort by the plaintiff to recover stock certificates which were fraudulently issued by the corporation to the individual defendants, the petition fails to allege facts showing the corporation's obligation to issue to him certificates of stock, or that the individual defendants practiced any artifice upon which he acted to his hurt and injury.  The plaintiff does not allege that he paid any consideration for the certificates of stock which the Slate Company issued to him.  It is true that he says the company issued to him stock certificates, fully paid up, but there is a wide difference between a corporation's issuing stock declared to be fully paid up, and the paying for such by the person to whom the stock is issued.  From the general tenor of the allegations the inference is almost indubitable that, prior to the alleged reorganization and change of name of the corporation, none of the capital stock had been paid in.  But be that as it may, notwithstanding the special demurrers calling for the same, when the plaintiff amended his petition he wholly failed to set out the corporation's charter or record showing corporate action.  A record of corporate action should be made on the minutes of the corporation; and if the plaintiff was entitled to the issuance of stock because of corporate action, he should have attached so much of the corporation's minutes as showed the existence of his demand, or explained why he could not do so.  The main allegations which relate to the imputation of fraud in the conduct of Lester and Morris are, that they owned an option to purchase 80 acres of land which they promised, without consideration, to give to the corporation; that instead of doing, they paid for the land with money borrowed with the assistance of two men who were officers of the corporation, and took title to themselves and afterwards sold the land to the company for a large stock issue. Admitting the plaintiff's facts as alleged, all he charges against these parties is that they violated a gratuitous promise to him and the orignal incorporators.  He does not allege that he did any act

on the faith of this promise, to his injury or damage. Whatever view may be taken of this petition, the trial court was right in dismissing it.   *Judgment affirmed. All the Justices concur.*