## 37189. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *v.* JONES.

DECIDED JULY 1, 1958—REHEARING DENIED JULY 30, 1958.

*Fulcher, Fulcher, Hagler & Harper, E. D. Fulcher, Knox & Neal,* for plaintiff in error.

*Randall Evans, Jr.,* contra.

GARDNER, Presiding Judge. 1. The insurance carrier filed a motion to this court to dismiss the writ of error, which motion we shall pass upon before passing upon the merits of the case. Counsel for the defendant in error has filed a motion to dismiss because counsel for the plaintiff in error has not complied with the statute and rules regarding the filing of the bill of exceptions. The record shows that the final order on demurrers was signed on March 4, 1958. The bill of exceptions was tendered to the trial court on March 24, 1958. The bill of exceptions was tendered according to the court rules. The judge signed the bill of exceptions on April 12, 1958, nineteen days following the date when the bill of exceptions was tendered. The judge does not show by certificate nor does the record specify or show any cause for delay. Code (Ann.) § 6-909 reads as follows: "If the judge shall determine that the bill of exceptions is not true, or does not contain all the necessary facts, he shall return the same, within 10 days, to the party or his attorney, with his objections to the same in writing. If those objections shall be met and removed, the judge may then certify, specifying in his certificate the cause of the delay. The judge shall order notice to the opposite party of the fact and time of tendering the exceptions and may hear evidence as to the truth thereof." Code (Ann.) § 6-909, providing as follows: "If the judge shall determine that the bill of exceptions is not true, or does not contain all the necessary facts, he shall return the same, *within 10 days,* to the party or his attorney, with his objections to the same in writing" (italics ours) must be read in conjunction with Code (Ann.) § 6-908.1, providing: "In cases where the defendant in error named in a bill of exceptions is represented by an attorney at

law or appears in propria persona, the judge, before certifying the bill of exceptions, *shall require reasonable notice* to such attorney or such party and afford him an opportunity to be heard on the question of whether or not the bill of exceptions as tendered is correct and complete" (italics ours), and also in pari materia with Code § 6-1312 providing: "No bill of exceptions shall be dismissed upon the ground that the same was not certified by the judge in the time required by law for tendering and signing bills of exceptions; but if it shall appear from the bill of exceptions that the same was tendered to the judge within the time required by law, a mere failure on his part to sign the same within the time prescribed shall be no cause for dismissal, unless it should appear that the failure to sign and certify the same by the presiding judge within the time prescribed by law was caused by some act of the plaintiff in error or his counsel."

In the present case, counsel for the plaintiff in error, although they had 30 days in which to tender the bill of exceptions, actually tendered it within 20 days. The court then set a date for hearing 19 days from the day of tender, which time is certainly a reasonable time under the provisions of Code § 6-908.1, and is also within a total time limit of 30 days to tender a bill of exceptions plus 10 days for the judge to examine the same. Nor does it appear that the date for hearing on the rule nisi was caused "by some act of the plaintiff in error or his counsel" rather than by the act of the trial judge in setting the date.

*Clay* v. *Floyd*, 208 *Ga.* 374 (66 S. E. 2d 916) is not authority to the contrary. In that case the trial court held the bill of exceptions for "some wholly undisclosed cause" for a period of 82 days. It is there stated (p. 376) that the trial judge "certified that reasonable notice of the presentation of the bill of exceptions had been given to counsel for the defendants in error and that an opportunity to be heard on the question of whether or not it was correct and complete had been afforded them. However, the record contains no fact or circumstance indicating that a hearing was had for the purpose of correcting or completing the bill of exceptions. . . Within ten days after the bill of exceptions was presented to the trial judge, he should have certified it *or proceeded in the manner and way now provided by law to correct*

*or complete it;* but his failure to do so would not work a dismissal of the writ of error, unless caused by some act of the plaintiffs in error or their counsel of record." (Italics ours.) Here the judge, within the 10-day period, took some action toward the completion of the bill of exceptions by setting a reasonable date for a hearing thereon, and on the same date the hearing was had the bill of exceptions was certified. We accordingly think there was a full compliance with the rules of procedure, under the *Clay* case, which is the very case relied upon in support of dismissal. No other case has gone so far. No case has held the bill of exceptions dismissible, when held for any cause for a period of 30 days or less. See *Moore* v. *Kelly & Jones Co.,* 109 *Ga.* 798 (35 S. E. 168), *Proctor* v. *Piedmont Portland Cement &c. Co.,* 134 *Ga.* 391 (67 S. E. 942), and *Hartley* v. *Marietta Nursery Co.,* 138 *Ga.* 736 (76 S. E. 39). That 30 days after tender would appear the minimum before such a motion would be good in any event see *Allison & Davis* v. *Jowers,* 94 *Ga.* 335, 336 (21 S. E. 570), and *Thompson* v. *Stephens,* 138 *Ga.* 205 (75 S. E. 136). The motion to dismiss the bill of exceptions is not meritorious.

2. Counsel for the insurance carrier cite and quote from *Hoffman* v. *Chester,* 204 *Ga.* 296; 307 (49 S. E. 2d 760) to the following effect: "A general demurrer only admits facts well pleaded. Where allegations are equivocal, doubtful, or subject to different interpretations, they will be construed most strongly against the pleader." This is a true principle of law and correct also is the principle of law that a demurrer will prevail if a fair inference may be drawn from the pleadings unfavorable to the plaintiff. See *Hulsey* v. *Interstate Life &c. Ins. Co.,* 207 *Ga.* 167 (60 S. E. 2d 353), *Moore* v. *Seaboard Air-Line Ry. Co.,* 30 *Ga. App.* 466 (118 S. E. 471), and *Conaway* v. *McCrory Stores Corp.,* 82 *Ga. App.* 97, 100 (60 S. E. 2d 631).

Since the niceties of pleadings are not required in justices' courts, the plaintiff needs to do nothing more than to inform the insurance carrier of the nature of the demand against it, and specific allegations of negligence are not necessary. See *Southern Ry. Co.* v. *Grizzle,* 45 *Ga. App.* 428 (165 S. E. 149). It is true that, should a petition contain a count which is voluntarily stricken, if any of the remaining counts set forth a good cause of

action, the demurrer should be overruled. See *Hay* v. *Collins*, 118 *Ga.* 243 (2) (44 S. E. 1002), and *Pryor* v. *Brady*, 115 *Ga.* 848 (42 S. E. 223). Counsel for the insurance carrier contend that the insurance policy should have been attached or copied into the pleadings and cite *Southern Mutual Ins. Co.* v. *Turnley*, 100 *Ga.* 296 (27 S. E. 975) in support of this contention. Counsel for the insurance carrier and for the plaintiff cite Code § 81-105 in support of their respective contentions. The pleadings in the instant case required that a copy of the policy be attached or that the petition allege the language it contained. It is presumed that the policy was issued in accordance with statutory provisions. See *Monday* v. *Life & Cas. Ins. Co. of Tenn.*, 82 *Ga. App.* 650, 651 (62 S. E. 2d 197), and *Curtis* v. *Girard Fire &c. Ins. Co.*, 190 *Ga.* 854 (11 S. E. 2d 3).

Ga. L. 1949, p. 1155, sec. 1, provides that school boards "are hereby authorized and required to cause policies of insurance to be issued insuring the school children riding therein."

The act of 1949 (Ga. L. 1949, p. 1155, et seq.) does not provide that the driver of the school bus must be the agent of the owner of the school bus and likewise does not require that the school bus driver must be acting within the scope of his employment.

It is nowhere alleged that the plaintiff was in fact the person referred to herein as the driver of the school bus. No right is shown in the plaintiff except insofar as he alleges that this right of action was assigned to him. He shows there was no written assignment, and an assignment of a chose in action must be in writing to entitle the owner to sue in a direct action at law in his own name. *Lamon* v. *Perry*, 33 *Ga. App.* 248, 250 (125 S. E. 907) ; *First National Bank* v. *Hartman Steel Co.*, 87 *Ga.* 435, 438 (13 S. E. 586).

In count 1 the plaintiff alleges that his payment of the amount of damages incurred by O'Shields to him was voluntary and that he is a conventional subrogee. A conventional subrogee is one who pays under an express or implied agreement with either debtor or creditor that he would be subrogated to creditor's rights and remedies. *McCollum* v. *Lark*, 187 *Ga.* 292 (200 S. E. 276). Only a court of equity has jurisdiction of conventional subrogation. See *Bleckley* v. *Bleckley*, 189 *Ga.* 47 (1) (5 S. E. 2d 206).

The exception to this rule is. noted in *First National Bank of Atlanta* v. *American Surety Co.*, 71 *Ga. App.* 112, 119 (30 S. E. 2d 402), where an assignment in writing existed, and the court stated: "Conventional subrogation can take effect only by agreement; and it has been said to be synonymous with assignment." *Bleckley* v. *Bleckley*, supra, and *Lee* v. *Holman*, 182 *Ga.* 559 (3) (186 S. E. 189), where it was held that agreements for subrogation need not be in writing, were equity cases. It follows that, where the type of agreement on which the action is brought is alleged to be an assignment of a chose in action, and it is no more than an assignment, a mere purchase of another's cause of action, it must be in writing if the assignee is to sue thereon in his own name in a purely legal action.

In count 2 the plaintiff alleges that his payment was involuntary and that he was a legal subrogee,—that is, one who is equitably entitled to the remedy by operation of law because he has advanced money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or where he has some interest to protect. These allegations were attacked by appropriate special demurrers which should have been sustained, since no facts are alleged to show that the plaintiff occupies this position.

The act of 1949, supra, has been construed in *Krasner* v. *Harper*, 90 *Ga. App.* 128 (82 S. E. 2d 267), to the effect that where county or other boards of education took out the insurance described therein the persons insured were beneficiaries; that their action was not against the members of the school board but was an action in contract directly against the insurance company on the theory of third party beneficiaries. This being true, the petition in the instant case contains three fatal deficiencies, none of which occurred in the *Krasner* case, as follows:

(1) While the act requires that the insurance be taken out for the benefit of school children, it merely authorizes that it be taken out for members of the general public, leaving this up to the board. There is no allegation here, as there was in the *Krasner* case, that the board did in fact take out a policy of insurance for members of the general public.

The contention that the act of 1949, supra, requires school

boards and owners of school buses to insure against injury to the general public is without merit. Section 1 of the act (Code, Ann., § 32-429) authorizes and requires policies of insurance to be issued insuring school children riding therein to and from school against death and bodily injury. Section 3 of the act (Code, Ann., § 32-431) merely "authorizes" a similar provision for the benefit of members of the general public. This is accident insurance, not liability insurance, and the question of negligence is not involved. The fact that the caption of the act reads as follows: "An act authorizing and requiring the various school boards of the counties, cities and independent school systems employing school buses, to cause policies of insurance to be issued insuring the children riding therein as well as the general public against death, bodily injury and property damage resulting from accidents in which said buses are involved" has no effect upon section 3 of the act, as contended, so as to make the insertion of a provision in the policy in favor of members of the general public mandatory.

(2) The plaintiff does not show himself to be a member of the general public injured under circumstances which would place liability on the insurer. Insofar as he shows that he paid a debt owed by the defendant insurer to O'Shields (owner of the damaged automobile) he fails to show an assignment of the right of action to himself so as to permit him to sue in his own name, nor does he show the payment to have been "involuntary" in the legal sense of the word, and this allegation is attacked also by special demurrer.

(3) In the *Krasner* case there was an allegation that the policy protected members of the general public. No special demurrer was filed on the ground that the policy was not attached. The court pointed out that its holding that a cause of action was set out against the insurance company was based on these two factors. Here, the face of the policy is demanded by appropriate demurrer, and since it forms the basis of the cause of action (if otherwise one should exist in favor of the plaintiff) it must be pleaded under Code § 81-105.

The court erred in overruling the general and special demur-

rers filed to the plaintiff's complaint as last amended.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*