Tompkins vs. Williams.

G. J. WRIGHT, for plaintiff in error.

MABRY, for defendants.

No. 108.—NICHOLAS TOMPKINS, plaintiff in error, *vs.* SOLOMON F. WILLIAMS, defendant.

[1.] A discrepancy between the name of the witness in the interrogatories and to the depositions, will not exclude the testimony, it being conceded that the opposite party knew what person was intended to be examined, and directed his cross-questions accordingly.

[2.] Where a witness is questioned in the direct interrogatory, as to a conversation which he had with one of the parties; and upon the cross-examination, is requested to state who was present when the conversation transpired, and he testifies, in answer to the direct interrogatory, to two conversations instead of one; and upon his cross-examination, only states who was present at one of the conversations, the testimony will be excluded.

[3.] To make testimony relevant, enough should be proven to show its applicability to the matter in issue; otherwise, it will be rejected.

[4.] There is no limit but the discretion of the Court, as to the introduction of testimony by way of reply, rebuttal, surrebuttal, rejoinder, surrejoinder, &c.

[5.] A vendor who gives to the vendee his bond for titles to land, taking his notes in payment of the purchase money, and afterwards transfers the notes without recourse over against him, cannot maintain an action of ejectment against the vendee, *on his own account*, to recover the land.

[6.] Whether his name may not be used by the transferee of the notes to enforce payment, or he be compelled, in Equity, to execute a conveyance to the holder of the notes for the same purpose—*Quere?*

Ejectment, in Heard Superior Court.    Tried before Judge BULL, November Term, 1855.

Before this cause was submitted to the Jury, the plaintiff moved the Court to reject the depositions of Jesse J. Cavender, on the ground that the commission issued for John Cavender, and the commissioners had inserted *Jesse J.* in lieu of *John.*    It was not denied, however, that the *person* was the same, and known to be so when the interrogatories were crossed; and that the interrogatories had been in office twelve months, and no objection before filed.    The Court rejected the testimony, and defendant excepted.

It appeared, on the trial, that the plaintiff, Solomon F. Williams, originally had the title to the land in dispute; that on the 8th day of December, 1849, he sold the land to one William P. Dobson, and received Dobson's notes for the purchase money, and executed a bond to make titles to Dobson, "or his assigns," on the payment of the purchase money. Dobson subsequently sold the land to Nicholas Tompkins, and Tompkins paid Dobson for the land and took Dobson's bond for titles, and also an assignment of Williams' bond to Dobson.    Williams transferred the notes of Dobson without indorsement, and afterwards brought this action of ejectment against Tompkins for the land.    On the trial, the Counsel for the defendant in the Court below, asked the Court to instruct the Jury—"That if they should find that Williams had transferred the notes given him by Dobson for the land, without recourse on Williams, that this was a payment as to Williams, and he could not maintain ejectment for the land." The Court refused this request, and this is the main ground

Tompkins *vs.* Williams.

of error relied on for review.  In the progress of the trial, the plaintiff tendered in evidence fourteen Justice's Court *fi. fas.* against William P. Dobson, in favor of Solomon F. Williams, as administrator of Oliver M. Porter, and the defendant objected to their admission as irrelevant, as there was no evidence that the notes on which the judgments were obtained were the ones given for the purchase money; and that they could have no relevancy to the issue between the parties before the Court.  The Court over-ruled the objection and admitted the evidence, and this, also, is excepted to.

B. H. HILL; SIMMS, for plaintiff in error.

G. J. WRIGHT, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in rejecting the testimony of Jesse J. Cavender ?

We think not.  It being conceded that the plaintiff knew the person intended to be examined, and that he had directed his cross-examination accordingly, he could not possibly have been injured by the misnomer.  Besides, the case being on the appeal, and the interrogatories having been filed in the Clerk's office for more than twelve months, the objection should have been made in writing, before the case was submitted to the Jury.  It was apparent on the face of the papers.

[2.] We hold that the testimony of Joseph B. Merrell was properly excluded.  The direct interrogatories, it is true, referred only to a single conversation with Williams.  It did not, however, identify the conversation as to time or place. But the witness, in his answer, relates two conversations which he held with Williams—one at Porter's house in 1850, the day before Porter died; and the other in 1851, when an inventory was taken on his estate.

Now having voluntarily, but in obedience to the obligation

·imposed by his oath, to tell the *whole* truth, mentioned what transpired on *both* of these occasions, the witness should have considered the cross-question as to who were present, &c. as applicable to both, and have answered accordingly.

[3.] The object in introducing the fourteen *fi. fas.* in favor of the estate of Porter against Dobson, was to show that the whole purchase money for the land had not been paid by Dobson; but to make this proof relevant, the plaintiff should have gone further, and identified this debt as a part of the purchase money. It does not appear but that these executions may have been founded upon some other and totally distinct consideration. The testimony should have been rejected.

[4.] Was the Court wrong in allowing John Smith to be sworn, to disprove the solvency of Dobson? We think not. The proof was to rebut the new evidence submitted by the defendant, as to the solvency of Dobson since plaintiff had closed.

[5.] But the main question in this case is, was Williams entitled to maintain this action on his own account?

He had transferred the notes given by Dobson to him, in payment for the land, to Porter, without recourse or liability over against him. What interest had he in the land? He only held the legal title to secure the notes; and ·he had parted with the notes for value, and upon terms which exonerated him from all responsibility. To our minds, it is clear that he could not sue for himself.

[6.] We will not say that his name might not be used by the holder of the notes for the purchase money, to enable the transferee to enforce payment; nor will we say but that the holder could, by a proceeding in Equity, compel Williams to convey him the title for the same purpose. We simply, however, mean to deny that Williams is entitled to eject Tompkins for his own benefit. And who has asked him to interpose for any body else? Perhaps the holder may not desire it. And could Tompkins, by filing a bill against Williams, and tendering the balance of the purchase money *to him*, get a

title? Surely not. For no one but the holder of the notes is entitled to receive the money.

We have not alluded to the fact, that Williams happens to be the administrator of Porter, as no reliance was put upon that circumstance in the argument. The case has been managed, throughout, and was discussed before, solely upon the assumption, that Williams was entitled to bring this ejectment in his own name and on his own account, he being the owner of the legal title, and the purchase money not having been fully paid to his assignee, Porter.

Suppose Williams were permitted to recover the land—what then? It could not be treated nor administered as the property of Porter's estate. It is manifestly improper and absurd to allow a vendor, who has parted with the land by giving a bond for titles, and parted with the notes given for the purchase money, without recourse, to intermeddle further with the land.