CADE *v.* JENKINS.

1. The right to collect promissory notes given for the purchase money out of personal property sold conditionally, the seller retaining title, is extended by the act of October 22d, 1887, to the holder of such notes, and is not confined to the original payee. Consequently, a transfer of such notes since the passage of said act, even if made without recourse on the payee, will not operate to divest the notes of their character as a debt for purchase money.

2. By virtue of said act, taken in connection with §3293 of the code which subjects property to attachment for its purchase money, the

holder of notes such as the act describes may, while the property is in the possession of the purchaser, proceed by attachment, and, after obtaining judgment, execute and have recorded the bill of sale provided for in the act, and then cause the execution issuing on such judgment to be levied upon the property, and thus enforce payment of the claim for purchase money.

April 4, 1892. Argued at the last term.

Attachment for purchase money. Promissory notes. Transfer without recourse. Before Judge MARTIN. Muscogee superior court. May term, 1891.

The attachment case of Jenkins against Cade coming on for hearing, Cade moved to quash and dismiss the attachment, upon the ground that it was sued out for the purchase money of a certain described engine and boiler, etc., purchased of the Ames Iron Works, and the notes given therefor had been transferred to Jenkins without recourse, as appeared by the attachment and declaration; and that the remedy of attachment did not exist in favor of plaintiff, he being transferee, the remedy of attachment for purchase money existing only in favor of the original vendor. This motion was overruled, and Cade excepted. It appeared that Jenkins made affidavit to obtain the attachment, that Cade owed him $600 and interest, which debt was created by the purchase by Cade of the engine and boiler, describing them, all made by the Ames Iron Works; and that the engine and boiler were in the possession of Cade. The declaration in attachment alleged that Cade was indebted to Jenkins, doing business under the name of Jenkins & Co., $200 with interest upon account for part price engine and boiler, and also $400 with interest and attorneys' fees upon two promissory notes; that this indebtedness of $600 was created by the purchase by Cade of the engine and boiler, describing them; that petitioner had sued out attachment, etc. The copies of the notes attached to the declaration showed that they were made payable to the order of the Ames Iron Works.

and were transferred, without recourse, by the Ames Iron Works to Jenkins & Company.

C. J. THORNTON and H. C. CAMERON, for plaintiff in error.

McNEILL & LEVY, *contra.*

LUMPKIN, Justice.

1. Where a vendor of land takes notes for the purchase money, securing their payment by reservation of title in himself, which notes he afterwards transfers without recourse and without any transfer of the reserved title to a third party, this operates as a payment of the purchase money, the vendee's equity becomes complete, and the vendor ceases to hold any interest in the land. *Tompkins v. Williams,* 19 *Ga.* 569; *McGregor v. Matthis,* 32 *Ga.* 417; *Neal v. Murphey,* 60 *Ga.* 389; *Carhart v. Reviere,* 78 *Ga.* 173. In such event, the debt evidenced by note loses its quality as a purchase money debt; the transferee becomes an ordinary creditor of the vendee, and cannot maintain attachment as for the purchase money. *Hunt v. Harbor,* 80 *Ga.* 746. In all the above cases there was no transfer of the realty in the sale of the notes to the transferee. There being no provision for it, the title kept back by the vendor could not pass to the buyer of the notes, and the vendor having no further claim, either against the realty or against the vendee, the title, at least to the fulness of a perfect equity, would necessarily be cast upon the vendee. Thus the security for the debt would become extinguished. It is insisted for the plaintiff in error that the same principle controls this case. Whether this may have been so before the act of October 22d, 1887, under the particular stipulations in the contracts here sued on, it is not necessary to decide. One of these contracts was signed by the defendant in attachment on October 17th, the other on October 27th, 1887; but they were both transferred and assigned to the

plaintiff on March 7th, 1889. Consequently the act of
1887 applies, and affects the plaintiff's rights under the
transfers. By consulting the act it will be seen that it
provides, in substance, that when any judgment has
been rendered on a note or. other evidence of debt,
given for the purchase money of personal property,
where the title to the same has been retained in the
vendor, the holder of said note or other evidence of
debt, may make and file and have recorded a bill of
sale to the defendant for the property; and if said
holder be dead, then his executor or administrator may
make and file such bill of sale, whereupon said personal
property may be levied on and sold under such judg-
ment as in other cases; provided, said judgment shall
be a lien upon the property, and the proceeds of the
sale thereof, prior to all other liens and claims, until the
said judgment shall be fully paid off and satisfied. Acts
1887, p. 62. This act is very similar in terms to §3654
of the code, which provides for filing a deed to land
held under bond for titles prior to levying on it under
judgment for the purchase money. But there is a signifi-
cant difference between the two. The statute touching
realty gives the remedy specifically to the *obligor* in the
bond for titles, and does not expressly extend it to any
transferee of the purchase money debt. Yet it was
held, where the vendor transferred the notes by indorse-
ment for value, thus remaining liable on them, that he
could still make the deed to the vendee for the benefit of
the transferee, so as to enable the latter to levy on and
sell the land under judgment upon the notes. *Scroggins*
v. *Hoadley*, 56 *Ga.* 165. But the act touching person-
alty describes the person having the remedy as the
" holder " of the note. This language plainly indicates
an intention to keep the security alive and available for
the transferee of the note or other evidence of debt, and
to put him in as favorable a position as the vendor, with
respect to subjecting the specific property to the claim

for its purchase money. An assignment of the notes, since this act, does not extinguish the security, but carries it along, The debt does not lose its character as a purchase money debt, but its peculiar privilege is transmitted together with the instrument evidencing it. The fact that the assignment is made without recourse makes no difference, since the language of the act is broad enough to embrace any holder. All the cases cited above were cases of real property, where title was reserved to secure the purchase money. They fall under §3654 of the code, and obviously are of no authority on the present question. The case of *Farrar* v. *Brackett*, 86 *Ga.* 463, involved personalty, and the principle applicable to the transfer of notes given in purchase of realty was followed. From an examination of the record in that case, it appears that the notes there spoken of were transferred on July 1st, 1886, before the act of 1887 came into operation. Besides, they were ordinary negotiable notes, and the contract between the parties contained no such stipulations as are found in this case; there was no mention of a transfer or of any rights to be enjoyed by the transferee. The contracts now sued on contain evidence that the parties' intention does not conflict, if indeed it does not exactly coincide, with the effect which should be given the statute. The debtor agrees that the notes may be assigned without notice to him, and that if default is made in payment of the purchase money or of any part thereof, the vendors *or their assigns* at any time may take possession of the property or of any part thereof, and the power of sale is likewise conferred on the vendors or their assigns. These provisions seem designed to prevent an extinction of the security by the title passing into the vendees on assignment; in other words, the assignees are to have the benefit of the vendors' reservation of title. Although there is no precise and formal stipulation that title to

the property is to pass into the assignees, such a purpose might possibly be inferred from the whole scope of the contract. See *Stanford* v. *Connery*, 84 *Ga.* 731; *First Nat. Bank* v. *Hartman Steel Co.*, 87 *Ga.* 435. At any rate the intention is clear enough that the debt should not lose its status or character as a purchase money debt, even in the hands of the vendors' assigns.

2. By virtue of the act just discussed, the holder of notes given for the purchase price of personalty occupies the same position in relation to the security afforded by the reservation of title as the vendor himself. It only remains to inquire whether the vendor, and therefore the holder, can use the proceeding by attachment for purchase money, in order to subject the property. Section 3293 of the code says: "Process of attachment may issue in behalf of any creditor whose debt is created by the purchase of property, upon such debt becoming due, when the debtor who created such debt is in possession of the property for the purchase of which the debt was created." Here is no distinction between absolute sales and conditional sales; and no requirement that title shall be in the debtor, but it suffices if the debtor be in possession. Consequently there is nothing in the statute to forbid the vendor by conditional sale from using its remedy, and no reason appears why he should be excluded. The act of 1887 requires title to be put into the debtor before levy and sale under the judgment, but does not prescribe any special mode of obtaining judgment. It says, "when any judgment" has been rendered, etc., which is comprehensive enough to include a judgment in attachment. Indeed, the counsel for plaintiff in error admits in his bill of exceptions, that the vendor could maintain attachment, and only insisted that the assignee of the notes could not. By taking the act of 1887 in connection with §3293 of the code, it appears that the assignee

of the notes may commence his suit to subject the specific property by attaching for the purchase money. The attachment issues to secure possession of the property, and when it is thus impounded, the suit proceeds as in other cases.   Upon obtaining judgment, the plaintiff may make and file and have recorded the bill of sale prescribed in the act, and then the property may be levied on and sold under the judgment.   If for any good cause the attachment should be dismissed, the case could nevertheless proceed for a general judgment. *Joseph* v. *Stein,* 52 *Ga.* 332; *Camp* v. *Cahn,* 53 *Ga.* 558; *Sutton* v. *Gunn,* 86 *Ga.* 652.   And the plaintiff would doubtless have, under such a judgment, the same right as to filing the bill of sale and selling the property in satisfaction of his demand.

There was no error in refusing to dismiss the attachment.                          *Judgment affirmed.*