Argued March 15, affirmed March 30, 1915.

# SEUFERT *v.* SIMONTON.

(146 Pac. 520.)

**Sales—Conditional Sales—Assignment of Buyer's Note—Effect.**

1.  A bill of sale and assignment of the conditional buyer's note carries with it the seller's contract of conditional sale.

**Replevin—Pleading—Cause of Action.**

2.  A reply in replevin for tools and machinery, alleging title derived by bill of sale from the original owner, subject to a conditional contract of sale, an assignment of the conditional buyer's note and a bill of sale to plaintiff, whereby he succeeded to all the rights of his assignor, including the right to demand performance of the terms of the conditional contract of sale, and a forfeiture by the conditional buyer of his right to retain the property by reason of failure to pay the stipulated installments, showed an absolute title in the plaintiff at the commencement of the action.

**Pleading—Complaint—Reply—Departure.**

3.  Such reply was not inconsistent with a complaint alleging that plaintiff was the owner and entitled to immediate possession of the tools and machinery described, that defendant at the commencement of the action was in possession, a demand for possession, refusal to deliver, and a wrongful withholding.

From Multnomah: THOMAS J. CLEETON, Judge.

Department 1.    Statement by MR. JUSTICE MCBRIDE.

The plaintiff, William J. Seufert, brought replevin against F. M. Simonton and Oregon Welding & Manufacturing Company, alleging that he was the owner and entitled to the immediate possession of certain tools and machinery, particularly described, that the defendants at the commencement of the action were in possession of the same in Multnomah County, Oregon, and further alleging demands for possession, refusal to deliver, and wrongful withholding. The defendant corporation answered by a general denial of all the allegations of plaintiff's complaint, except as to its corporate existence, and averred that on November 24, 1909, plaintiff sold the property to said defendant, and that ever since said date it had been the owner and

entitled to possession of the same. The defendant Simonton answered with the same general denials, and for a further defense alleged:

"That on the 9th day of September, 1911, the plaintiff was the owner of 76½ shares of the capital stock of the Portland Oxy-Acetylene Welding & Fixture Company, the name of the said corporation having been changed to the Oregon Welding & Manufacturing Company, and on the said 9th day of September, 1911, the said plaintiff sold the said 76½ shares of stock to this defendant for the sum of $3,000; that in payment of the said 76½ shares of stock this defendant paid to plaintiff the sum of $400 in cash on said 9th day of September, 1911, and on same date gave his (defendant's) promissory note to plaintiff, whereby defendant agreed to pay plaintiff the sum of $1,900, the same to be paid in installments of $100 per month commencing May 12, 1912; that in payment of the balance of the purchase price of said 76½ shares of stock this defendant promised and agreed to pay the note for $700 held by one F. A. Seufert, father of this plaintiff, which $700 note was secured by a chattel mortgage on the plant of the Portland Oxy-Acetylene Welding & Fixture Company, now the Oregon Welding & Manufacturing Company; that thereafter, and long before the commencement of this action, this defendant paid off the said $700 note and chattel mortgage to the said F. A. Seufert; that on the 9th day of January, 1913, there was an agreement made between the said plaintiff and this defendant, whereby plaintiff specially agreed with this defendant that if defendant would pay to plaintiff the sum of $500, to be applied upon the said $1,900 note, that the plaintiff would extend the time of payment on the said $1,900 note so that the defendant would only be required to pay the sum of $10 each month, or as much as the defendant could conveniently pay per month, on said $1,900 note, until the same was paid in full; that in pursuance to said agreement this defendant did on the —— day of March, 1913, pay to the said plaintiff the sum of $516.75, which amount the plaintiff under said agreement has credited upon said

note, and that thereafter this defendant has regularly paid each month the sum of $10 per month on the said $1,900 note in accordance with said agreement, and the last payment having been made thereon on the 29th day of September, 1913, and that since said plaintiff accepted the said $516.75 and each monthly installment of $10, and credited the same on plaintiff's said $1,900 note in accordance with the agreement made and entered into between plaintiff and this defendant, on or about the 9th day of January, 1913, and that there was no installment due on the said $1,900 note at the time this action was brought.''

The plaintiff filed a reply to the answer of the defendant corporation as follows:

''The plaintiff, replying to the further and separate answer of defendant Oregon Welding & Manufacturing Company, denies and alleges: Denies each and every allegation contained in paragraphs 2, 3, 4, and 5 of said defendant's further and separate answer to plaintiff's complaint. Plaintiff, for a further and separate reply to said defendant's further and separate answer, alleges: That the personal property described in plaintiff's complaint herein was acquired by plaintiff from F. A. Seufert, who, by bill of sale under seal, dated April 10, 1913, transferred and conveyed the same to the plaintiff, subject, however, to a contract of sale thereof to defendant F. M. Simonton, dated September 9, 1911; that the date of said bill of sale was by inadvertent error and mistake inserted in a blank relating to the interest due under said contract of sale; that in and by the contract of sale referred to in said bill of sale the said F. A. Seufert, seller, agreed to sell and transfer to said defendant F. M. Simonton, purchaser, the personal property described in plaintiff's complaint herein for the consideration expressed, payable —— according to the terms of one promissory note bearing the same date, by which note said F. M. Simonton promised and agreed to pay to said F. A. Seufert the sum of nineteen hundred dollars ($1900) in installments of one hundred dollars ($100) per

month, commencing May 20, 1912, with interest thereon annually at 7 per cent per annum; that in and by said contract of sale it was further stipulated and agreed between the parties thereto that said personal property should remain the property of said F. A. Seufert until the full payment of said note, but that the same should remain in possession of and be used by said F. M. Simonton, provided, however, that in case the said purchaser, F. M. Simonton, should fail to pay either the interest due on said note or any monthly installments therein provided for, that then the said F. A. Seufert may immediately, at his option, take possession of all machinery and tools above mentioned, and may at his option declare said contract canceled, and may retain any sums paid thereon; that on or about the said April 10, 1913, the said F. A. Seufert, for value, also transferred and assigned the said promissory note to this plaintiff, who thereby became the owner and holder thereof; that defendant F. M. Simonton failed to pay the interest on said note, which became due September 9, 1912, and further failed to pay any of the installments due on said note, and that nothing has been paid thereof, except that, on account of certain work done and performed by the defendants, there was on March 20, 1913, credited on said note the interest thereon to September 9, 1912, and $383.75 on account of the principal, and there was since paid thereon, in installments of ten dollars ($10) each, the sum of sixty dollars ($60), and no more; that by reason of said defendant F. M. Simonton's failure to pay the said note according to the terms thereof, notwithstanding demands therefor on the part of plaintiff, this plaintiff, as the successor in the title and interest of said F. A. Seufert, exercising the option under said contract of sale, rescinded the same and demanded of said defendant F. M. Simonton the return of said personal property, and did, and does now, offer upon the receipt of said property to deliver to said defendant his said note and contract of sale duly canceled, but that said defendant refused and still refuses to deliver the personal property to plaintiff; whereupon this action was brought.''

· Plaintiff also filed a reply to the answer of defendant Simonton, which is substantially as follows:

"Admits paragraph 1 of said defendant's further and separate answer; admits the matter alleged in paragraph 2, shown after the word 'that' on line 22, to and including the word 'defendant' on line 28, on page 2 of said answer; but denies all other matter alleged in said paragraph of said answer; admits the matter alleged in paragraph 3, on lines 3, 4, and 5, on page 3 of said answer, but denies all other matter alleged in said paragraph; admits paragraphs 4 and 5 of said answer; denies each and every allegation in paragraphs 6 and 8 of said answer."

The defendant corporation demurred to plaintiff's reply on the ground that it did not constitute a reply to the new matter in defendant's answer, and that the facts therein set forth were not in any way connected with the allegations of the complaint. The demurrer being overruled, the case came to trial, which resulted in a verdict and judgment for plaintiff, from which defendants appeal.        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Walter S. Hufford.*

For respondent there was a brief and an oral argument by *Mr. C. A. Applegren.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

There is no bill of exceptions in this case, and the only matters presented arise upon the demurrer of the defendant corporation to plaintiff's reply.

1. As will appear by the foregoing statement, the reply alleges that the plaintiff derives title to the property by a bill of sale from F. A. Seufert, who trans-

ferred the property to plaintiff subject to a conditional contract of sale of the same to Simonton, by which contract Simonton had agreed to pay for the same the sum of $1,900, as evidenced by a promissory note, payable in installments of $100 per month, with interest annually at 7 per cent; that it was stipulated in the contract of sale between F. A. Seufert and Simonton that Seufert was to remain the owner of the property until the note was paid according to its terms, and that if Simonton should fail to pay the interest, or any monthly installment provided for, F. A. Seufert might immediately take possession of the property and declare the contract canceled; and that the $1,900 note had been assigned to plaintiff, and that Simonton had defaulted. Whereupon the plaintiff had declared the contract rescinded and demanded a return of the property. The bill of sale and assignment of the Simonton note to plaintiff by F. A. Seufert carried with them the conditional contract: *Cade* v. *Jenkins,* 88 Ga. 791 (15 S. E. 292) ; *Townsend* v. *Southern Product Co.,* 127 Ga. 342 (56 S. E. 436, 119 Am. St. Rep. 340). This being the case, all the interest or ownership of the property which F. A. Seufert had at the time of the indorsement of the note passed to plaintiff.

2, 3. The reply, being consistent with the complaint, does not constitute a departure, but shows an absolute title in plaintiff at the commencement of the action. It simply alleges in detail the sources of plaintiff's title, which, as alleged, consists in: (a) The original ownership of the property by F. A. Seufert, encumbered by a conditional contract of sale; (b) an assignment of Simonton's note and a bill of sale to plaintiff, whereby he succeeded to all the rights of F. A. Seufert in the property, including the right to demand performance by Simonton of the terms of his contract;

and (c) a forfeiture by Simonton of his right to retain the property by reason of his failure to pay the installments as stipulated. All these facts could have been shown without alleging them in the reply as constituting the links in plaintiff's chain of title, and if supported by the evidence, as we must assume they were, they established an absolute title in plaintiff: *Mayes v. Stephens,* 38 Or. 512 (63 Pac. 760, 64 Pac. 319).

The objection that the complaint does not state that the property was in Multnomah County is evidently the result of an oversight, as it alleges:

"That said personal property at the time of the commencement of this action is in the possession of the defendants at 305 Glisan Street, in the City of Portland, county of Multnomah, State of Oregon."

The judgment of the Circuit Court is affirmed.

AFFIRMED.

Mr. Chief Justice Moore, Mr. Justice Burnett and Mr. Justice Benson concur.