JONES, administratrix, *v.* HEAD, ordinary.

858

No. 12202.   FEBRUARY 19, 1938.
ADHERED TO ON REHEARING, MARCH 24, 1938.

*Joel B. Mallett,* for plaintiff.   *O. M. Duke,* for defendant.

GRICE, Justice. Counsel for the plaintiff insists that the suit can be maintained on two grounds: First, that this is a proceeding in equity seeking relief from void processes issued by the ordinary as ex-officio clerk of the court of ordinary, for cancellation of void process and fi. fa., and for an injunction against further procedure thereon by such ex-officio clerk.   Second, the petition seeks a settlement in a court of equity under authority of the Code, § 113-2203, which provides that "A court of equity shall have concurrent juris-

diction with the ordinary over the settlement of accounts of administrators." We shall examine these two contentions in inverse order, to determine whether a cause of action is set out in either particular. The section above quoted does not appear to be of legislative origin, but seems to have been placed in our Code by the first codifiers, and retained in each subsequent Code. It was not meant to announce any new principle; for the English courts of equity had long exercised such a jurisdiction, and the American courts, with certain limitations and restrictions, have generally recognized the same rule. Schouler on Executors and Administrators (2d ed.), § 520; 21 C. J. § 97. The courts of other jurisdictions are not in all respects in accord as to the extent of the limitations and restrictions referred to. Even in those States, however, where it is held that the statutes relating to probate courts have not taken away the former equity jurisdiction, the general principle of concurrent jurisdiction applies, namely, that when the jurisdiction of one court attaches in a proper case, the jurisdiction of the other court is to that extent excluded. 21 C. J. § 99, and authorities cited in the notes. There is a distinction between possessing jurisdiction, and exercising it. "A court may have jurisdiction of a particular subject-matter, but by settled judicial policy ought not to exercise it." Harrigan v. Gilchrist, 121 Wis. 127 (99 N. W. 909). To same effect see Wadhams Oil Co. v. Tracy, 141 Wis. 150, 156 (123 N. W. 785, 18 Ann. Cas. 779); Curtis v. Brown, 29 Ill. 201, 231. It by no means follows that because a court of equity has concurrent jurisdiction with the ordinary over the settlement of accounts of administrators, it will act in every case involving that subject-matter. The instant case is not one where the representative of an heir at law filed suit in equity against an administrator for an accounting and settlement, as in Ewing v. Moses, 50 Ga. 264; or where heirs at law sued such an administrator and his sureties upon his bond, praying for the same kind of relief against the administrator, as in Williams v. Lancaster, 113 Ga. 1020 (39 S. E. 471), and in Wheeler v. Horne, 136 Ga. 486 (71 S. E. 901), and in Terry v. Chandler, 172 Ga. 715 (158 S. E. 572). Nor is this case in any respect like Dean v. Central Cotton-Press Co., 64 Ga. 670, where it was held that a collateral attack could not be maintained on a decree of a court of chancery decreeing the sale of property in the hands of the exec-

utor, because "the jurisdiction of chancery was co-ordinate with the ordinary's on the matters of distribution of estates." Jackson, Justice, stresses the fact that it was a collateral attack, and adds: "Besides all this, the case peculiarly required chancery interposition." It has been said that "Courts of equity have concurrent jurisdiction with courts of ordinary in the administration of estates of deceased persons, in all cases where equitable interference is necessary or proper to the full protection of the rights of the parties at interest." *West* v. *Mercer,* 130 *Ga.* 357, 360 (60 S. E. 859); *Morrison* v. *McFarland,* 147 *Ga.* 465 (94 S. E. 569); *Thompson* v. *Thompson,* 171 *Ga.* 185 (154 S. E. 889).

In *Walton* v. *Reid,* 148 *Ga.* 176, 179 (96 S. E. 214), Hill, Justice, said: "As a general rule, equity will not interfere with the regular administration of estates. It is only in certain cases specified in the Civil Code [1910], § 4596" (1933, § 37-403). In *McKinney* v. *Powell,* 149 *Ga.* 422 (100 S. E. 375), in delivering the opinion of the court sustaining a demurrer to a petition filed by an administrator seeking the interposition of a court of equity in the management of an estate, Beck, Presiding Justice, said: "None of the questions raised are of such character as to render them peculiarly subjects of equity jurisdiction, but are all questions cognizable in a court of law and in the court of ordinary, which first had jurisdiction of the issues involved in this case." In *Evans* v. *Pennington,* 177 *Ga.* 56 (169 S. E. 349), parties claiming an interest in an estate sought by a suit in equity to require an accounting and settlement of an executrix, and this court in affirming the sustaining of a general demurrer to the petition, said (Bell, Justice, delivering the opinion) that "the petition should not be retained by a court of equity merely to require an accounting and settlement as to this land, when such relief may be had in the court of ordinary." The case before us is one in which the administratrix herself prays "that a court of equity take jurisdiction over the settlement of accounts of your petitioner as administratrix of said estate," and names the heirs at law of her intestate as defendants, as well as the ordinary. The Code, § 37-403, declares: "Equity will not interfere with the regular administration of estates, except upon the application of the representative, either, first for construction and direction, second for marshaling the assets; or upon application of any person interested in the estate

where there is danger of loss or other injury to his interests." This is an attempt to seek the powers of a court of equity to interfere with the regular administration of an estate. It is not an application of the representative for construction and direction, nor for the marshaling of assets. Does it present a case within the meaning of the last clause of the section, to wit, "or upon application of any person interested in the estate where there is danger of loss or other injury to his interests?" In *Darby* v. *Green*, 174 *Ga.* 146 (162 S. E. 493), referring to the provisions of what is now § 37-403, it was observed that while any person interested in the estate may seek the intervention of equity where there is danger of loss or injury to his interests, in order to procure the direction of the court of equity in the conduct of the administration then pending in the court of ordinary, yet he can not under that section "seek the intervention of equity merely as a means of wrenching the administration from the jurisdiction of the court of ordinary." In the opinion the Chief Justice further remarks that "This section refers to an action to regulate administrations. It has no reference to withdrawing the administration altogether from the court of ordinary in order that a court of equity may administer the estate, except where the administration in the court of ordinary originated in fraud or is being fraudulently exercised." We do not understand this language to refer to any fraud in the ordinary, or to any fraudulent exercise by him of any of his official functions. Nor do we understand that his reference was to any fraud of that official when, in the opinion in *Arnold* v. *Harris*, 179 *Ga.* 896, 899 (177 S. E. 738), he said: "This case is one in which no fraud is alleged to have tainted the judgment of the court of ordinary, either in overruling the caveat or in proving the will in solemn form."

The plaintiff in her petition charges the ordinary with fraud and collusion, and an attempt to make the estate pay him, for his own personal use, a cost bill incurred on account of his own void and illegal acts, and that the issuance of the rule nisi is an attempt illegally and fraudulently to preclude the petitioner from protecting herself as the legal representative of her deceased mother's estate. She insists that these allegations take her case out of the general rule, and make it the duty of a court of equity to allow her to settle her accounts outside the court of ordinary, and to

retain her petition therefor in chancery. We know of no authority which would justify us in wrenching from the court of ordinary the supervision of this administration merely because a plaintiff makes such allegations in her petition. She must look to the remedies given her by the law for correcting an error of the court of ordinary, or from prohibiting any unauthorized acts by him, or for obtaining relief if she be illegally restrained of her liberty by any void process issued by him. Equity has no concurrent jurisdiction with the ordinary in a case such as this, nor does it present a situation justifying the interposition of a court of equity under other principles of law or any other section of our Code. Would any one contend that, by alleging that a justice of the peace before whom a cause was pending was acting arbitrarily and oppressively, a party could prevail on a court of equity to take the case out of the justice's court? Or, by alleging that any judge of a city court, in a matter before him, was conspiring with the opposite party, in fraud of the other's rights, that equity would thereby be given jurisdiction to enjoin the city-court judge from proceeding further, and order the entire controversy determined in a court of equity? The answer of the ordinary, a party defendant, is not before us, and we of course mean no reflection on him by saying, that in a petition alleging the facts set forth in the one now before us all we can do is to repeat the admonition uttered years ago by the first Judge Lumpkin, to this effect: A judicial officer, in the discharge of his duties, should say to his feelings, his passions, and his prejudices, if any such he has, as Abraham did to his young men: "Abide ye here, and I and the lad will go yonder and worship."

Nor, for similar reasons, can the petition be retained on the first ground urged, to wit, the prayer for cancellation of the process alleged to be void, the fi. fa. alleged to be illegal, and for an injunction against further like procedure. For every one of the wrongs alleged by her, there is available to her a remedy which the law considers adequate and complete. There is no equity in the petition, and the judgment sustaining the general demurrer is

*Affirmed. All the Justices concur, except Russell, C. J., and Hutcheson, J., who dissent.*

BELL, J., concurs in the judgment.

JENKINS, Justice, concurring specially. I agree to the conclu-

sion set forth in the opinion prepared by Justice Grice, that the plaintiff has an adequate remedy at law. The threatened contempt proceeding would appear to be punitive in character, and not a proceeding to collect costs, whether legal or illegal. If it be assumed that such a threatened punitive proceeding would be wholly illegal, the plaintiff would not be remediless at law to resist same and to have it so adjudicated. My concurrence is special for the reason that I may not be able to agree to the intimations made in the opinion which seem to restrict the concurrent jurisdiction of courts of equity over settlements of accounts of administrators. I concur, however, in the judgment, for the reason that I do not deem the petition to be one presenting a case for equitable settlement of the accounts of an administrator, as contemplated by the Code, § 113-2203.

ON REHEARING.

GRICE, Justice. The views of the writer on rehearing, concurred in by Justices Bell and Jenkins, are as follows:

Counsel for the plaintiff insists that the decision in *Ben Hill' County* v. *Massachusetts Bonding & Insurance Co.*, 144 *Ga.* 325 (87 S. E. 15), holds the contrary to what has been ruled in the instant case. There the execution was against the sheriff, and the company as his surety. Application was made by plaintiff in fi. fa. to the judge of the superior court for the appointment of a receiver to take charge of a sufficient amount of the funds which the company had on deposit with the treasurer of the State, to satisfy the execution. No previous levy of the execution was made on the property of the sheriff or his surety. The sheriff denied that he owed the county anything. This court held that since an affidavit of illegality will not lie until there has been a levy on property, the surety company had no legal remedy, and affirmed a judgment which enjoined the county from proceeding further with the receivership, and held that the facts furnished a basis for an equitable proceeding in which the rights of all the parties could be settled. In that case the equitable relief was granted because the county through a receiver was about to sell and apply to the satisfaction of its execution property of the surety. The threatened injury there was that its property would be sold. In such a situation the law afforded no remedy at all to the surety, unless in equity. In the instant case there is no threat to apply any prop-

erty of the plaintiff (the defendant in execution) to the satisfaction of the fi. fa. The threat is, according to the petition, that the ordinary will attach her for contempt. If her basic contention, to wit, that the ordinary has no power to use this fi. fa. as the foundation of a contempt proceeding against her, be sound, then the law does afford her, in case she is arrested, a plain and adequate remedy for its illegal use, to wit, an application for the writ of habeas corpus. It is further insisted that habeas corpus is not an adequate remedy, because it would greatly embarrass and humiliate the plaintiff to be arrested, even though she be discharged after a hearing. If that contention were to be granted, the door of equity would be opened to every person about to be illegally restrained of his liberty; a proposition which only needs to be stated in order to make apparent its unsoundness.

It was urged in the motion that equity had jurisdiction in order to have expunged from the records of the court of ordinary all of the proceedings in reference to the attachment for contempt. That a court of equity has broad powers must be conceded. In many cases it may restrain, and in many others it may compel; but it is asking too much of it to seek the obliteration of the records of a court of record. There is one notable instance in Georgia where the General Assembly expunged a portion of its own records. Marbury and Crawford's Digest, 573, 780, sec. 2. The Senate of the United States, on March 10, 1837, ordered expunged from its own records the resolutions of censure adopted by that body on March 28, 1834, in relation to the conduct of Andrew Jackson (Thirty Years in the U. S. Senate, by Thomas H. Benton, 528, 730) ; but they are far from being judicial precedents for the relief here sought. The law requires the ordinary as ex-officio clerk to keep a record of his acts. It would be an usurpation of power for a court of equity to order him to expunge that which the law requires him to preserve, whether the order as passed was legal or illegal.

However, on rehearing the court stands evenly divided as to whether the former judgment of affirmance should be adhered to, or whether it should be vacated and the judgment of the trial court reversed. Russell, C. J., Atkinson, P. J., and Hutcheson, J., favor a reversal. Justices Bell, Jenkins, and Grice are of a contrary opinion. The judgment of affirmance is therefore adhered to by operation of law.

RUSSELL, Chief Justice. Having dissented quoties toties from the original decision affirming the judgment of the lower court, I necessarily favored the grant of the motion for a rehearing, and now oppose adherence to the original judgment.