HOFFMAN *et al v.* CHESTER.

No. 16291.   September 15, 1948.

*O. C. Hancock, C. E. Moore,* and *Grant, Wiggins, Grizzard & Smith,* for plaintiffs in error.

*James H. Dodgen, H. A. Irwin,* and *J. Walter LeCraw,* contra.

WYATT, Justice. In his equitable petition, seeking an accounting and other relief, the plaintiff charges the administrator with numerous acts of alleged mismanagement. These charges against the administrator are covered fully in the statement of facts, and may be briefly summarized as follows: (1) fraud practiced by the administrator upon the court of ordinary; (2) disbursements made by the administrator which were unnecessary and illegal; (3) a failure to pay the plaintiff $1000, representing one-half the purchase-price of a piece of property sold by the administrator; (4) a failure to proceed to recover certain property belonging to the estate; (5) acts of the administrator against the interests of the estate, being the payment to himself, out of the funds of the estate, of monthly rentals on property leased by him to the estate, and the payment of sums for improvements on the leased property owned by the administrator; (6) the refusal of the administrator to allow the plaintiff and his wife to occupy an apart-

ment in one of the boarding houses belonging to the estate; (7) general incompetency on the part of the administrator, which resulted in a loss of at least $500 per month to the estate, when, had the administrator exercised proper judgment and management, the estate would not have sustained this loss.

"Equity will not interfere with the regular administration of estates, except upon the application of the representative, either, first for construction and direction, second for marshaling the assets; or upon application of any person interested in the estate where there is danger of loss or other injury to his interests." Code, § 37-403. The plaintiff relies, of course, upon the latter clause of this section, claiming that there is danger of loss or other injury to his interests; and he also relies upon that provision of the Code, § 113-2203, which states that "a court of equity shall have concurrent jurisdiction with the ordinary over the settlement of accounts of administrators." In connection with the construction and application of these two sections of the Code, there is another provision which should be considered: Where law and equity have concurrent jurisdiction, the court first taking will retain it, unless a good reason can be given for the interference of equity. § 37-122.

Equitable suits for accounting against administrators and executors have been the source of many conflicting opinions by this court. In construing and applying the quoted sections, there is a line of authority holding to the effect that equity will not interfere to require an accounting and settlement by an administrator at the instance of parties claiming an interest in the estate, unless there is danger of loss or other injury to them. *Evans* v. *Pennington,* 177 *Ga.* 56 (169 S. E. 349); *McKinney* v. *Powell,* 149 *Ga.* 422 (100 S. E. 375); *Griner* v. *Wilson,* 181 *Ga.* 432 (182 S. E. 592); *Jones* v. *Head,* 185 *Ga.* 857 (196 S. E. 725). Another line of authority is to the effect that, equity having concurrent jurisdiction with the court of ordinary over the settlement of accounts of administrators, a suit for accounting may be brought in equity, without regard to imminent danger of loss, so long as it does not appear that an actual proceeding for an accounting has been instituted in the court of ordinary. See *Morris* v. *Nicholson,* 198 *Ga.* 450 (31 S. E. 2d, 786); *Ewing* v. *Moses,* 50 *Ga.* 264; *Strickland* v. *Strickland,* 147 *Ga.* 494 (94

S. E. 766); *Clements* v. *Fletcher*, 154 *Ga.* 386 (114 S. E. 637); *Calbeck* v. *Herrington*, 169 *Ga.* 869 (152 S. E. 53); *Manry* v. *Manry*, 196 *Ga.* 365 (26 S. E. 2d, 706).

It is impossible to reconcile these decisions. We shall not attempt to do so, nor to lay down an all-inclusive rule as to when an accounting against an administrator may be had in a court of equity. Dealing with the case now before us, we think that the correct rule, as applied to the facts of this case, is as follows: While it would now appear that there are decisions holding that ordinarily an equitable petition for an accounting against an administrator may be maintained without the necessity of showing imminent danger or loss, where it does not appear that the court of ordinary has already assumed jurisdiction for the purpose of an accounting, this rule will not be extended to a case which shows plainly that an accounting would be premature. Accordingly, where, as here, it appears that, under a previous adjudication of this court, the administrator is entitled to hold and manage the estate, without accounting to the legatee under a will, until the happening of a certain contingency, which the petition reveals has not occurred, an accounting and final settlement would be premature, in the absence of a removal of the administrator. It would appear axiomatic that a petition must make a case for an accounting before a court of equity could assume jurisdiction for the purpose, irrespective of its concurrent jurisdiction with the court of ordinary.

Being of the opinion that the mere fact that no accounting proceedings have been instituted in the court of ordinary is insufficient in this case to authorize an accounting in a court of equity, we turn to a consideration of whether there is shown such fraud, or danger of loss and injury, as would authorize the interference of equity in the regular administration of the estate.

Disregarding for the moment the allegations of fraud, we shall consider the other charges made by the petition.

With reference to the allegations of (a) illegal disbursements, (b) a failure to proceed to recover property belonging to the estate, (c) payment of excessive monthly rentals for property owned by the administrator, and for improvements thereon, and (d) general averments of waste and mismanagement, the plaintiff has a clear and adequate remedy at law. The petition reveals

that the administrator is under bond, and there is no allegation that the security is inadequate. The Code, § 113-1229, provides: "Whenever the ordinary knows, or is informed by any person having any interest in the estate, that the administrator wastes or in any manner mismanages the estate, or that he or his sureties are likely to become insolvent, or that he refuses or fails to make returns as required by law, or that for any reason he is unfit for the trust reposed in him, he shall cite such administrator to answer to such charge at some regular term of the court, and upon the hearing of his return the ordinary may, in his discretion, revoke the letters of administration, or require additional security, or pass such other order as in his judgment is expedient under the circumstances of each case." Under this law, as applied to each of the enumerated allegations, the plaintiff may obtain adequate protection and redress by applying to the court of ordinary. See, in this connection, *Astin* v. *Carden*, 194 *Ga.* 758 (22 S. E. 2d, 481), which is a case containing similar allegations of mismanagement. See also *Beecher* v. *Carter*, 189 *Ga.* 234 (5) (5 S. E. 2d, 648) ; *Tinsley* v. *Maddox*, 176 *Ga.* 471 (16) (168 S. E. 297) ; *Thompson* v. *Thompson*, 171 *Ga.* 185 (154 S. E. 889) ; *Collins* v. *Carr*, 112 *Ga.* 868 (2) (38 S. E. 346).

With reference to the alleged failure of the administrator to pay to the plaintiff $1000, representing one-half the purchase-price of property sold by the administrator (which we assume, for the purpose of this ruling, is an attempt to allege non-payment of the specific legacy provided by the will), the plaintiff alleged: "Petitioner shows that the said John D. Hoffman, as shown by paragraph nine of his petition filed with the Ordinary of Fulton County on the 17th day of October, 1946, sold the property at 1266 West Peachtree Street, Atlanta, Georgia, for the sum of $2000 cash; and that he paid over to W. L. Mynatt $1000 and paid over to James Chester, your petitioner, the sum of $1000. Petitioner alleges that any payment alleged or contended to have been made to him is untrue, that the said J. D. Hoffman did not turn over to him $1000 received from the sale of the property at 1266 West Peachtree Street; and nowhere in the report attached to the petition does the said John D. Hoffman claim that he had paid over to your petitioner the sum of $1000 as a result of the sale of the West Peachtree property." These

allegations are equivocal and not sufficiently specific. It will be noted that the plaintiff alleges: "that the said J. D. Hoffman did not turn over to him $1000 *received from the sale of the property at 1266 West Peachtree Street;* and nowhere in the report attached to the petition does the said John D. Hoffman claim that he had paid over to your petitioner the sum of $1000 *as a result of the sale of the West Peachtree property."* The careful wording of this paragraph, and the nature and true import of the allegations, may be noted when it is borne in mind that under the previous ruling of this court the administrator, in effect, was directed to pay to the plaintiff's attorney the sum of $300 as attorney's fees out of the special legacy payable to the plaintiff, which sum the petition reveals has been paid, thus leaving only $700 to which the plaintiff would have been entitled, if the property brought $2000 as alleged. An examination of the returns referred to by the plaintiff reveals payments to the plaintiff in the total amount of $894.65 (though not in one sum, nor in the report "claimed to have been paid over as a result of the sale of the West Peachtree property"). While we are well aware of the fact that we can not examine evidence to determine the truth or untruth of allegations of a petition, but that, on the contrary, as against a general demurrer, the truth of well-pleaded facts must be presumed, we have called attention to the above facts merely for the purpose of accentuating the equivocal nature of the allegations made. A general demurrer only admits facts well pleaded. Where allegations are equivocal, doubtful, or subject to different interpretations, they will be construed most strongly against the pleader. Conceding the truth of the allegation that the administrator did not turn over to the plaintiff $1000 "received from the sale of the property at 1266 West Peachtree Street," this is an insufficient averment that the plaintiff has not been paid, in full, the specific legacy provided by the will.

The petition fails to show any right on the plaintiff's part, either as a paying tenant or as a beneficiary under the will, to the occupancy of rooms in the boarding-house property belonging to the estate; and, for these reasons alone, he is entitled to no injunction against a threatened eviction. This is true irrespective of any consideration of the contradictory allegations wherein he first alleges that he has already been evicted from certain

rooms and later alleges that the administrator is threatening to evict him from these rooms.

In the brief of counsel for the plaintiff, it is urged that the charges of fraud against the administrator are sufficient to invoke the aid of equity in this case. With this contention we can not agree, for the reason that the allegations of fraud are too general and entirely insufficient. It is a well-settled rule that general averments of fraud are insufficient; and that sufficient facts must be alleged to constitute fraud. The bases of the allegations of fraud in this case·are: (a) misrepresentations of the plaintiff's attorney, which induced the plaintiff to request the appointment of the defendant Hoffman as administrator; and (b) illegal returns filed by the administrator.

With regard to the first, it is sufficient to say that the entire basis of the fraud is the alleged misrepresentations made to the plaintiff by his own attorney. It is not even intimated that the defendant Hoffman knew of, or participated in, the alleged misrepresentations. The allegations wholly fail to show any fraud practiced by the defendant Hoffman on the court of ordinary in securing his appointment. The attorney, who allegedly made the misrepresentations, is not a party to the present suit. Moreover, in previous litigation between the same parties, it was held that the plaintiff is not entitled to be appointed administrator, and that the defendant Hoffman is entitled to hold and administer the property until the happening of a· specified event. No question of fraud was raised in that case, when the parties submitted to the court the question of the right of the administrator to continue to administer the estate; and the plaintiff alleges no sufficient excuse for his failure to submit the issue of fraud in the previous suit. He is bound by the judgment in that case.

The remaining allegation of fraud is founded solely upon the alleged failure of the administrator to attach original vouchers to his annual returns. It is not alleged that the returns were inaccurate, nor that they contained misrepresentations as to disbursements made. On the contrary, the alleged fraud consists solely in the filing of returns unaccompanied by vouchers.

We have no hesitancy in ruling that the mere failure to attach vouchers to returns, standing alone, would not constitute a fraud upon the court of ordinary. The total failure to file any returns

at all would not, within itself, constitute fraud, nor afford a good reason for the interference of equity. See *Griner* v. *Wilson*, supra. While under the law it is the duty of an administrator to file annual returns accompanied by original vouchers (Code, § 113-1409), the duty is placed upon the ordinary to examine the returns to determine their correctness, and interested parties are given thirty days in which to file objections to the returns. § 113-1411. It does not appear from the petition that the plaintiff ever raised any question before the court of ordinary as to the correctness of these returns; nor is there any excuse given for his failure to do so, if he had good reasons for objection. Illustrative of the soundness of the doctrine requiring a showing of diligence in connection with alleged fraud, is the revelation that in the instant case the returns complained of show that an order of the court of ordinary, approving the return and the allowance of additional fees to the administrator, was agreed to in writing by the plaintiff's attorney, who incidentally was not the same attorney against whom fraud was alleged. While the returns, if irregular as alleged by the plaintiff, might be stripped of their status as prima facie evidence of their correctness, such irregularity would not constitute fraud.

In ruling that the plaintiff failed to allege that the returns were untrue or contained misrepresentations as to actual disbursements made, we have not overlooked the allegations to the effect that the returns listed certain notes as being paid, of which the plaintiff had no knowledge, nor do we overlook the fact that the plaintiff alleged that the returns showed a profit of approximately $10,000, when in fact the returns showed a loss in the operation of one of the boarding houses. With regard to the first allegation, the plaintiff later alleged in his petition a secured indebtedness against the estate of several thousand dollars in excess of the notes shown to be paid by the administrator. Moreover, the mere fact that the plaintiff had no knowledge of the outstanding notes against the estate is an insufficient averment that the payments were unwarranted or untrue. With regard to the last allegation, it is equivocal, evasive, and amounts to a conclusion of the pleader. The fact that one boarding house showed a loss would not warrant the conclusion that the remaining assets of the estate, including another boarding house, did not show a total profit for the entire estate in the amount shown by the returns.

If, as a matter of fact, the administrator has made illegal disbursements, the plaintiff has full protection in the court of ordinary. The administrator is under bond. For a failure to make "returns as required by law," or for insufficient security, the administrator may be cited in the court of ordinary; and the court of ordinary is vested with full power to revoke the letters of administration, or to pass such order as may be necessary for the protection of interested parties. Code, § 113-1229.

Apart from any question of accounting, it is our opinion that when a court of ordinary, in the exercise of its constitutional jurisdiction, has assumed and entered upon the administration of an estate, that court should retain it unless a good reason can be given for the interference of equity. The interference of equity, which seeks merely to oust the jurisdiction already acquired by the ordinary, can not be used as a substitute to relieve a party from the results of his failure to file proper objections to the rendition of judgments in the court of ordinary, unless it appears from the petition that the judgments of the court of ordinary were procured by fraud on the part of his adversary, unmixed with negligence upon the part of the petitioner. While any party interested in an estate may seek the intervention of equity when there is danger of loss or injury to his interests, in order to procure the direction of a court of equity in the conduct of the administration then pending in the court of ordinary (Code, § 37-403), this provision is not intended, in the absence of fraud or imminent danger of loss or injury due to inadequate protection and relief in the court of ordinary, to supply a means of wrenching the administration from the jurisdiction of the court of ordinary.

There being a clear remedy in the court of ordinary for all the alleged wrongs committed by the administrator, the petition failed to set forth a cause of action for any of the relief prayed for; and the trial court erred in overruling the general demurrer.

*Judgment reversed. All the Justices concur, except Bell, J., absent on account of illness.*